Charles BEECHEM, Appellant,

v.

C.M. PIPPIN, Individually and Sani-Agri, Inc., Appellees.

No. 14248.

Court of Appeals of Texas, Austin.

Feb. 20, 1985.

Randall C. Simmon, Cuba, Simmon & Mayfield, Temple, for appellant.

Wesley N. Harris, Kelly, Appleman, Hart & Hallman, Fort Worth, for appellees.

Before POWERS, KEITH* and GAMMAGE, JJ.

POWERS, Justice.

Appellant Charles Beechem appeals from a trial court order dismissing, for want of jurisdiction, his suit against appellees C.M. Pippin and Sani-Agri, Inc. We will reverse the order and remand the cause for further proceedings.

The operative facts are not disputed. Beechem is a resident of Texas; Pippin and Sani-Agri are residents of Georgia. Beechem, as part of his business, occasionally leases or sells "Terragator" sludge applicators, sometimes advertising in a nationally-circulated magazine devoted to waste-water treatment. Some of the rental business he obtains is attributable to knowledge passed on to potential customers by word of mouth.

Beechem testified that he entered into a lease contract with appellees as the result of two telephone calls by Pippin to Beechem. The agreement was later reduced to writing. Payments were made by mail to Beechem's place of business, and appellees arranged for an independent carrier to haul the machine to and from its location in Bell County. Appellees also had their insurance agent contact Beechem in Texas to arrange for insurance on the equipment. A dispute arose and appellant sued appellees in the district court of Bell County, Texas. Appellees moved for dismissal for want of in personam jurisdiction. The trial court granted their motion.

The trial court filed findings of fact and conclusions of law. Findings of fact number three and four hold that neither Pippin nor Sani-Agri "purposefully did any act or consummated any transaction in the State of Texas from which a cause of action pleaded by Plaintiff arose." Beechem contends these findings are against the great weight and preponderance of the evidence, and that the trial court erred as a matter of law in deciding that it had no jurisdiction over appellees. We agree. However, the impression weighs heavily on us that the ablest judge, reviewing the somewhat confused state of the law concerning the exercise of in personam jurisdiction over nonresident defendants, might come to the same conclusion as the able trial judge here. We turn to a discussion of the relevant holdings in order to assemble the proper principle as best we may.

### THE TEXAS "LONG–ARM" STATUTE

■ It is by now firmly established that the Texas Long-Arm Statute, Tex.Rev.Civ. Stat.Ann. art. 2031b (Supp.1985), "reaches as far as the federal constitutional requirements of due process will permit," at least insofar as acts which may constitute "doing business" are concerned. *U-Anchor Advertising, Inc. v. Burt,* 553 S.W.2d 760 (Tex.1977); *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 491 (5th Cir.1974); *Jetco Electronic Indus., Inc. v. Gardiner,* 473 F.2d 1228, 1234 (5th Cir.1973); *Reich v. Signal Oil & Gas Co.,* 409 F.Supp. 846, 849 (S.D.Tex.1974), aff'd without opinion, 530 F.2d 974 (5th Cir.1976); *Reul v. Sahara Hotel,* 372 F.Supp. 995, 997 (S.D.Tex.1974); N.K. *Parrish, Inc. v. Schrimscher,* 516

---

* Keith, retired, Justice, Ninth Court of Appeals, sitting by assignment. See Art. 1812, as amended.

S.W.2d 956, 958 (Tex.Civ.App.1974, no writ). *See also Hall v. Helicopteros Nacionales de Colombia,* 638 S.W.2d 870 (Tex. 1982), rev'd on other grounds, —— U.S. ——, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

*Hall* would also seem to indicate that a "nexus" between the contacts and the cause of action is not an absolute requirement. In that case the Supreme Court of Texas stated that a relationship between the defendant's contacts with the State and the cause of action "is unnecessary when the nonresident defendants [sic] presence in the forum through numerous contacts is of such nature ... so as to satisfy the demands of the ultimate test of due process." However, we need not reach that issue because of our holding below that the cause pleaded here *did* arise from the contacts of appellees with the State.

We therefore are not as concerned, perhaps surprisingly, with the literal wording of the long-arm statute as we are with the pertinent *judicial interpretations of due process. Siskind v. Villa Foundation For Educ., Inc.,* 642 S.W.2d 434, at 436 (Tex. 1982). *See also* Mowry, *The Texas Long-Arm Statute, Article 2031b: A New Process is Due,* 30 Sw.L.J. 747, at 755 (1976). We are thus spared, in the words of the Texas Supreme Court, the task of engaging "in technical and abstruse attempts to consistently define 'doing business.' " *U-Anchor Advertising, Inc. v. Burt, supra,* at 762. Henceforth, we need only engage in such attempts consistently to define "due process" as it relates to the exercise of in personam jurisdiction over nonresident defendants.

## THE LIMITS OF DUE PROCESS SET BY JUDICIAL DECISIONS

■ "Traditional fairness" is the overriding consideration in determining when the exercise of in personam jurisdiction over a nonresident defendant violates the constitutional guaranty of due process of law. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Milliken v. Meyer,* 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940). This rather elusive and generalized standard is not very helpful, and courts have devised the somewhat more concrete "minimum contacts" test. *Id.*

■ A measurement of the quality and quantity of contacts is helpful as an indication of the extent to which a party's activities have had intrastate consequences, *Calder v. Jones,* —— U.S. ——, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), and the degree to which a party has availed itself of the benefits and protections of the forum state. *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Multiple contacts with the state increase the likelihood that a litigant could foresee the possibility of one day having to defend his conduct there. *Worldwide Volkswagen Corp v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Moreover, the quantity and quality of contacts are indicators of the degree to which citizens of that state were put at risk by defendant's actions. There is a point at which the presence of all or a combination of these factors makes it "fair" to hold a person answerable in the courts of the state with which he has had these minimum contacts. Put another way, multiple state contacts at some point create a regulatory interest on the part of the state as to activities that touch and concern it. Brilmayer, *How Contacts Count: Due Process Limitations on State Court Jurisdiction,* 1980 S.Ct.Rev. 77, 87.

■ These factors are obviously relevant even when the subject of the litigation is *unrelated* to the contacts. The Supreme Court of the United States has reserved the question of the nature and number of contacts necessary to sustain in personam jurisdiction when the suit has arisen from or is *related* to the contacts. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* —— U.S. ——, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). It admittedly is difficult to decide when a cause of action "arises from" or is related to the contacts with the State, not unlike the problems of actual and proximate causation in the law of torts. Moreover, it is difficult to define precisely what is meant by a "contact" with a state.

Nevertheless, we believe there is a more compelling case to be made for the exercise of in personam jurisdiction in those instances where a relationship exists between the contacts with the forum state and the cause of action brought in the courts of that state. Even in these circumstances, however, there must be some minimal level of contacts before in personam jurisdiction is asserted. *U-Anchor Advertising, Inc. v. Burt, supra.*

Once it is decided that the defendant's contacts with the forum state make it "fair" to exercise jurisdiction over him there are apparently other considerations which bear on whether suit *should* be maintained there or in some other state having jurisdiction over the parties. With respect to certain precedents seemingly out of harmony with current doctrine, it has been suggested as a rationalizing principle that the relative convenience of the parties should govern the choice of forum in certain cases. von Mehren & Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis,* 79 Harv.L.Rev. 1136, 1167–1169 (1966). *See also Worldwide Volkswagen Corp. v. Woodson, supra,* 444 U.S. at 292, 100 S.Ct. at 564. By convenience we mean the relative burden on each party of defending a suit in a foreign forum. It might be said to encompass as well certain litigational considerations, such as the presence of evidence and witnesses in a State, and the presence of assets that might need protection from concealment and dissipation. von Mehren & Trautman, *supra,* at 1141, 1167. All of these considerations are germane to a determination of which is the most convenient state in which to try a suit.

■ However, convenience to litigate should not, we think, be confused with jurisdiction to do so. Convenience alone cannot confer jurisdiction on a court in a forum with which a plaintiff has no contacts, *Hanson v. Denckla, supra,* 357 U.S. at 254, 78 S.Ct. at 1240, *Worldwide Volkswagen Corp. v. Woodson, supra,* 444 U.S. at 294, 100 S.Ct. at 565, and seems to be more in the nature of a venue question.

(One may, after all, imagine situations where it might be more "convenient" to try a case in a forum with which neither party had previous contacts. Moreover, it seems very likely that cases could arise where it could be more inconvenient to try a suit on the far side of a state than to travel a few miles across the nearest border into an adjacent state for trial.)

While it is true that convenience alone does not confer jurisdiction, it is sometimes the case that severe inconvenience to a party will require that the cause be transferred to another court having jurisdiction of the parties. This is the gist of the rules governing change of venue, and the doctrine of forum non conveniens.

■ Dicta in some of the cases hint at a doctrine that convenience might in certain instances tip the due-process scales in favor of exercising in personam jurisdiction. *See, e.g., Worldwide Volkswagen Corp. v. Woodson, supra,* at 292, 100 S.Ct. at 564. Aside from what appears to us to be a confusion of the principles of venue and jurisdiction, we have reservations about the utility of such a standard. It is difficult enough to determine when the contacts of a party with a certain forum are of sufficient quality and quantity to give rise to in personam jurisdiction. We believe it unduly complicates matters to add to this problem the many-faceted considerations of convenience. We therefore decline to advance that doctrine here.

■ It has also been suggested that the strong interest of a state in providing a forum where its citizens can litigate their grievances, or the state's special interest in regulating certain areas, such as insurance, might justify the exercise of in personam jurisdiction over nonresident defendants in certain cases. *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), explained in *Hanson v. Denckla, supra,* 357 U.S. at 252, 78 S.Ct. at 1239, and *Worldwide Volkswagen Corp. v. Woodson,* 444 U.S. *supra,* at 292, 100 S.Ct. at 564. We think there are serious problems with this formulation, as it confuses legislative wishes to assert jurisdic-

tion with a constitutional right to do so. *Brilmayer, supra,* at 107.

One more word is appropriate with respect to our refusal to rest in personam jurisdiction on convenience, a state's interest in providing forums for its citizens, or a state's interest in regulating particular activities. These factors are extremely volatile. They change with technological and other innovations, including those that increase the mobility of citizens and the accessibility of information. *See McGee v. International Life Ins. Co., supra,* 355 U.S. at 222–223, 78 S.Ct. at 200–201. It seems desirable to us that constitutional requirements be traceable to more neutral principles, making law more predictable, less conclusory, and more prescriptive as rules by which to decide future cases. Wechsler, *Toward Neutral Principles of Constitutional Law,* 73 Harv.L.Rev. 1 (1959); *Akron v. Akron Center for Reprod. Health,* 462 U.S. 416, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983) (O'Connor, J. dissenting).[1]

■ In summary, then, we will decide the jurisdictional issue by looking at whether appellees had contacts with this State, and the nature and number of those contacts. From these we will decide, where appropriate, (1) the degree to which appellees have availed themselves of the privileges, benefits and protections of this State, (2) the foreseeability, of intrastate effects traceable to appellees' activities, and (3) the degree to which the citizens of this State were put at risk by appellees' conduct. If in addition the cause of action arose from or was related to the contacts, the case for exercising jurisdiction will be much more compelling, not least because it seems "fairer" to hold one accountable for consequences traceable to his contacts with the State than for unrelated consequences.

## THE FOREGOING PRINCIPLES APPLIED

■ We think it clear initially that the cause pleaded by Beechem arose out of the contacts of appellees with this State. Pippin solicited the contract by a telephone call to Beechem in Texas, Beechem signed the contract here, and payments were made by mail to Beechem's business address in Texas. It seems fair to say that appellees "purposefully [availed themselves] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla, supra.* Moreover, it was certainly foreseeable that the contacts might result in litigation, and that the citizens of this State were to some degree put at risk by appellees entering into and performing the contract or not performing it.

Appellees rely in their brief on *U-Anchor Advertising, Inc. v. Burt, supra. U-Anchor* was a breach-of-contract action against an Oklahoma resident. It resembles somewhat the present action. There, the *only* contact between the defendant and the State of Texas was the mailing of "six and perhaps seven monthly payments to U-Anchor at its office in Amarillo ..." *Id.* at 761. The contract was initiated, negotiated, and solicited in Oklahoma by a salesman sent *from* Texas to Oklahoma for that purpose. The Texas Supreme Court upheld an intermediate court determination that there were insufficient contacts to justify the exercise of in personam jurisdiction over the Oklahoma resident by Texas courts.

Appellant claims that *U-Anchor* is distinguishable from the present case. We

---

1. As Justice O'Connor stated in *Akron:* "[I]t is clear that the [Court's] approach violates the fundamental aspiration of judicial decision making through the application of neutral principles 'sufficiently absolute to give them roots throughout the community and continuity over significant periods of time ...' Cox, *The Role of the Supreme Court in American Government* 114 (1976)"; "[I]t is apparent ... that neither sound constitutional theory nor our need to decide cases based on the application of neutral principles can accommodate an analytical framework that varies ... according to the level of ... technology available when a particular challenge to state regulation occurs." *Id.* at 2507. *See also Dronenburg v. Zech,* 741 F.2d 1388, at 1395–96 (D.C.Cir.1984).

agree. U-Anchor Advertising sent its salesman to Oklahoma and he initiated and negotiated the contract there; here, Pippin contacted Beechem in Texas by telephone seeking to lease the "Terragator." Two such calls ultimately resulted in a lease contract. Beechem accepted over the phone, and the contract was later reduced to writing. In our opinion, the contract was solicited and negotiated in Texas, and performed in part in this State. (*See also McGee v. International Life Ins. Co., supra*, discussed below, where the mailing of a reinsurance contract from a nonresident insurance company to a resident was deemed to have been a solicitation in the forum state.) And while these may seem to be somewhat technical distinctions, we are counseled in *U-Anchor* that "[n]arrow factual distinctions will often suffice to swing the due process pendulum." *U-Anchor Advertising, Inc. v. Burt, supra*, at 764. In *U-Anchor*, on the other hand, the forum in which suit was brought was *not* the place where the contract was negotiated or solicited.[2]

Appellees had other contacts with Texas. Appellees mailed a payment to appellant's Texas office, and otherwise corresponded with appellant by letter sent to Texas. Appellees paid for the transfer of the equipment to and from its original Texas location. They caused their insurance agent to contact Beechem in Texas to arrange coverage for the machine.

We find in another decision additional support for our holding that appellees are subject to jurisdiction under art. 2031b. We refer to *McGee v. International Life Ins. Co., supra*. The petitioner in that case was a California resident who had purchased a life-insurance policy from an insurance company which later assigned the policy to the respondent insurance company, a Texas resident. Petitioner's mother was the beneficiary under the policy. Petitioner negotiated a new contract with the respondent insurance company, whose only contact with petitioner's home state was the mailing of the reinsurance policy to the insured. Indeed, the respondent had never solicited or done any insurance business in California. Upon the death of the insured, the beneficiary of the policy sued in the State of California to recover on the contract. She prevailed in that forum, and then initiated suit on the California judgment in the courts of Texas, which denied relief on the grounds that the California court lacked jurisdiction over the respondent. The United States Supreme Court reversed, holding that "[i]t is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with the state." *Id.* 355 U.S. at 223, 78 S.Ct. at 201.

It is fair to say that the contacts in *McGee* were about as minimal as they could have been. But in that case, as here, the cause of action arose from or was related to the contacts, such as they were, partly because the reinsurance contract in *McGee* was *solicited* in California. *Hanson v. Denckla, supra*, 357 U.S. at 251, 78 S.Ct. at 1238. In this sense, *McGee* and the present case are consistent. In *U-Anchor*, the cause of action did not arise from the contacts of the appellee there with Texas, since the contract was not solicited or negotiated in Texas by the Oklahoma resident; on the contrary, it was the Texas resident who solicited and negotiated the contract in Oklahoma. The Supreme Court of Texas noted in this regard that "since the contract was solicited, negotiated, and consummated in Oklahoma, [appellee Burt] might reasonably expect its enforcement to be governed by Oklahoma law." *U-Anchor Advertising, Inc. v. Burt, supra*, at 763;

---

**2.** Appellees, however, point out that Beechem advertised the availability of a terragator in a nationally-circulated waste-water treatment magazine (although not claiming to have acted on the basis of any such advertisement), and claims on this basis that the original solicitations were by Beechem through these ads. Beechem's uncontradicted testimony was that he had at one time advertised similar equipment, though not the particular terragator leased to appellees, and that the nature of the business was such that the availability of these machines "kind of gets around." It would seem, then, that the question of who actually initiated or solicited this agreement is closer here than in *U-Anchor*.

*Hanson v. Denckla, supra.* This too is consistent with *McGee.*

■ While it is undisputed that Beechem entered into a contract with Pippin and Sani-Agri, the precise relationship between Pippin and Sani-Agri is not clear from the record or the pleadings. It *is* clear from the record that Pippin entered into the contract on behalf of Sani-Agri, and therefore the contacts of Pippin relative to the contract will be imputed to Sani-Agri. *International Shoe Co. v. Washington, supra,* 326 U.S. at 320, 66 S.Ct. at 160.

■ We do not imply by this opinion that merely contracting with a resident of this State will alone support jurisdiction in Texas courts to determine whether a breach has occurred. *Estes Packing Co. v. Kadish & Milman Beef Co.,* 530 S.W.2d 622 (Tex.Civ.App.1975, no writ), holding disapproved in *U-Anchor Advertising, Inc. v. Burt, supra,* at 764. In *Estes,* a Texas corporation sued a Massachusetts corporation to recover sums allegedly owing on a contract. A broker in Chicago orally ordered beef from the Texas corporation, which the broker sold before delivery to the Massachusetts corporation. The broker instructed the seller to ship the beef to Massachusetts. The Massachusetts corporation rejected part of the shipment. *"Up to that time [the two corporations] had had no negotiations or communication with each other about the meat "* (emphasis supplied). *Id.* at 624. While the issue is, we think, a close one, it appears to us that the Massachusetts corporation did not purposefully avail itself of the privilege of conducting business in the State.

■ Even were we to hold insufficient the contacts of Sani-Agri with this State, alone and through its representative, there is another particularly significant reason why it seems "fair" or "substantially just" to assert jurisdiction over appellee Pippin, albeit the issue was not raised in the briefs submitted to this Court. Pippin's attorney read into evidence at the hearing a deposition wherein Pippin admitted to owning both real and personal property in Texas and to having previously conducted sales in Texas. While the possession of property in the forum state does not alone necessarily constitute sufficient contact to justify the exercise of in personam jurisdiction, *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), it undoubtedly is important, along with the other activities, to a determination of whether the defendant has so enjoyed the benefits, protections and privileges of the forum state as to render the exercise of jurisdiction over his person consistent with "fundamental fairness," *International Shoe Co. v. Washington, supra,* even, we think, *when those contacts are unrelated to the controversy.*

We hold, therefore, that the contacts of appellee Pippin—those that were related to the cause as well as those that were unrelated—were quantitatively and qualitatively sufficient to make appellee answerable in the courts of Texas on the alleged breach of contract. Moreover, we hold that the contacts of Sani-Agri with Texas, through the acts of its representative, were sufficient to warrant the exercise of in personam jurisdiction over Sani-Agri as well. Accordingly, we reverse the order below and remand the cause for further proceedings not inconsistent with this opinion.