**Hal FRANKLIN, Appellant,**

v.

**GEOTECHNICAL SERVICES, INC., Appellee.**

**No. 2–90–142–CV.**

Court of Appeals of Texas, Fort Worth.

Nov. 6, 1991.

Rehearing Denied Dec. 18, 1991.

---

Liddell, Sapp, Zivley, Hill & LaBoon and John C. Nabors and Julia M. Edwards, Dallas, for appellant.

Chappell & Handy, P.C. and Michael Hrabal, Fort Worth, for appellee.

Before JOE SPURLOCK, II, HILL and MYERS, JJ.

## OPINION

HILL, Justice.

Hal Franklin appeals from the trial court's action of sustaining the special appearance and granting a dismissal in favor of Geotechnical Services, Inc., the appellee. In five points of error he contends that there is no evidence, or, alternatively, factually insufficient evidence to support the trial court's action.

We affirm, because we hold that under the facts of this case the exercise of jurisdiction by the State of Texas would offend traditional notions of fair play and substantial justice.

Franklin is a resident of the State of Texas, while Geotechnical is a nonresident corporation located in Nebraska. Prior to April 28, 1989, Franklin placed an advertisement in a national water-well trade journal for the sale of a drilling rig consisting of a Mahew 1000 and a water tool truck. On or about April 28, 1989, a Geotechnical employee contacted Franklin by telephone from Nebraska to express Geotechnical's interest in purchasing the drilling rig. The initial contact commenced a series of telephone conversations and items of written correspondence in which Franklin and Geotechnical, through Jeff Anderson and Michael Siedschlag, its senior vice-president, negotiated the terms of the sale of the drilling rig.

Franklin indicated in his letter of April 28 that the drilling rig was in New Jersey, where it had been used in its most recent job. Anderson requested that Franklin send pictures of the rig to Geotechnical via Federal Express. On the same day, Franklin sent the pictures and a letter that described the rig and specified the price as $24,500 F.O.B. S. Jersey. The letterhead indicated that the letter was sent from Fort Worth, Texas.

On or about May 3, 1989, Geotechnical sent a letter indicating acceptance of the sale, although there is some evidence that Geotechnical thought that its contract was with Clearwater Well Drilling in New Jersey, with Franklin acting as its agent.

Franklin sent wiring instructions for the purchase money in a letter sent via facsimile transmission on May 9, 1989. Siedschlag later told Franklin in a telephone conversation that Geotechnical would not wire funds as payment of the purchase price of the rig until after representatives of Geotechnical had had an opportunity to inspect the rig.

Geotechnical requested that Franklin send copies of Texas vehicle registration receipts and bills of sale regarding the rig. He honored its request by sending the copies along with his May 9 letter. The letter also confirmed the transportation arrangements Franklin had secured to transport the rig from Graham to Omaha.

Geotechnical decided that instead of using the transportation Franklin had arranged with the Texas trucking company, it would send representatives to Texas to transport the rig to Omaha. The representatives arrived on or about May 16, 1989, to inspect the rig. Apparently, at some later time following the inspection, Geotechnical decided against following through with the sale.

Geotechnical's representatives felt that the rig that was depicted in the photos Franklin sent was not the same rig they inspected in Texas. The representatives did not have the authority to consummate the sale, nor did they do so. Franklin brought this action for Geotechnical's breach of its contract to purchase the rig.

■ A Texas court may exercise jurisdiction over a nonresident if the Texas long-arm statutes, TEX.CIV.PRAC. & REM. CODE ANN. secs. 17.041–17.069 (Vernon 1986), authorize the exercise of jurisdiction and if the exercise of jurisdiction is consistent with federal and state constitutional guarantees of due process. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex.1990). We will assume for the purposes of our discussion that Geotechnical was doing business in the State of Texas so that the Texas long-arm statute authorizes the exercise of jurisdiction.

■ The next issue is whether the exercise of such jurisdiction under the long-arm statute is consistent with due process. In order to comply with federal constitutional requirements, Texas has adopted a formula for jurisdiction over nonresidents in its courts:

(1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state;

(2) The cause of action must arise from, or be connected with, such act or transaction. Even if the cause of action does not arise from a specific contact, jurisdiction may be exercised if the defendant's contacts with Texas are continuing and systematic; and

(3) The assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

*Id.* at 358.

Based upon the considerations outlined in paragraph three of the formula, we hold that the assumption of jurisdiction by Texas in this factual situation would offend traditional notions of fair play and substantial justice. Consequently, we further hold that the evidence is both legally and factually sufficient to support the trial court's legal conclusions that Geotechnical is not amenable to process issued by the courts of Texas and that the 153rd District Court does not have jurisdiction of the person or property of Geotechnical. *See U–Anchor Advertising, Inc. v. Burt*, 553 S.W.2d 760, 763 (Tex.1977), *cert. denied*, 434 U.S. 1063, 98 S.Ct. 1235, 55 L.Ed.2d 763 (1978).

Franklin appears to primarily rely on the cases of *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957); *Product Promotions v. Cousteau*, 495 F.2d 483, 497 (5th Cir.1974); *Schlobohm*, 784 S.W.2d at 355; *O'Brien v. Lanpar Co.*, 399 S.W.2d 340, 340–41, 343 (Tex.1966); *Portland Sav. & Loan Ass'n v. Bernstein*, 716 S.W.2d 532, 537 (Tex.

App.—Corpus Christi 1985, writ ref'd n.r.e.), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1200, 89 L.Ed.2d 313 (1986); *Beechem v. Pippin*, 686 S.W.2d 356, 361 (Tex.App.—Austin 1985, no writ); *Wright Waterproofing Co. v. Applied Polymers*, 602 S.W.2d 67, 69–71 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.); and *N.K. Parrish, Inc. v. Schrimscher*, 516 S.W.2d 956, 959 (Tex.Civ.App.—Amarillo 1974, no writ).

We find that each of these cases involves more contacts with Texas than are present in this case. In *Schlobohm*, the defendant had numerous, continuing contacts with Texas. *Schlobohm*, 784 S.W.2d at 359. In *Beechem*, payments were made by mail to Texas and the out-of-state defendants arranged for transportation to haul equipment to and from Texas. *Beechem*, 686 S.W.2d at 358. In this case there was never any agreement to make payments in Texas, and it was only after the making of the contract that Geotechnical learned for the first time that the equipment was in Texas and not New Jersey, as had been earlier represented. Also, Geotechnical had some doubts that the equipment that their representatives saw when they came to Texas was the same equipment that was encompassed by the contract.

In *Portland*, the defendant made several calls to Texas, sent letters to Texas, and visited Texas. *Portland*, 716 S.W.2d at 534. Suit was for violation of security laws, consumer protection statutes, fraud, etc. The court held that the plaintiff's reliance on the defendant's representations occurred in Texas and that all acts alleged to create liability related to ongoing negotiations embodied in the defendant's calls, letters, and visits. *Id.* at 537. We find that the result was based on the nature of the lawsuit brought against the defendant and is therefore not applicable in this case, which is not the same type of case.

The Dallas Court of Appeals, in *Wright Waterproofing*, made much of the fact that the defendant had appointed a manufacturer's representative in Texas to deal with its customers. *Wright Waterproofing Co.*, 602 S.W.2d at 71. In *N.K. Parrish, Inc.*, the Amarillo Court of Civil Appeals noted that the written contract between the parties stated in bold type that the contract was to be performed in Texas. *N.K. Parrish, Inc.*, 516 S.W.2d at 957.

In *Product Promotions*, it is true that neither the defendants nor the contract had much connection with Texas. *Product Promotions*, 495 F.2d at 495. However, one of the defendants did send certain reports and film prepared as part of the contract to the plaintiff in Dallas. Also, the Fifth Circuit Court of Appeals held that Texas was the place of the contract because the plaintiff's letter of acceptance was written in Texas, making Texas the place where the last act necessary to the completion of the contract was done. *Id.* In the case at bar, Geotechnical's letter of acceptance was written in Nebraska. If we accept the rule stated in *Product Promotions*, Nebraska is the place of the contract.

Finally, *McGee* involved the solicitation of insurance directed by an out-of-state insurance company to a resident of California. *McGee*, 355 U.S. at 221, 78 S.Ct. at 200. The record did not reflect that the company had ever done any other business in the state of California. The United States Supreme Court held that California had jurisdiction because the beneficiary's suit against the company was based on a contract that had substantial connection with California. *Id.* at 223, 78 S.Ct. at 201. The court pointed out that the contract was delivered in California, the premiums were mailed from California, and the insured was a resident of California when he died. *Id.* We hold that the contract in this case did not have substantial connection with Texas.

We acknowledge that we could, in the same way, distinguish the facts in this case from those in *U–Anchor*, 553 S.W.2d at 761. However, we feel that based upon the general principles as set forth in that case and the cases relied upon by Franklin that the result in this case should be the same as the result in *U–Anchor*.

■ Franklin contends that the Siedschlag deposition was not before the court as evidence. Although counsel for Geotechni-

cal read excerpts from the deposition into the record, and did not move to have the entire deposition entered into evidence as such, we believe that the entire deposition was properly before the trial court for its consideration. TEX.R.CIV.P. 120a(3) provides a list of what may be considered in a challenge to the jurisdiction, as follows: "pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony." *Id.* We hold that not only was the entire deposition properly before the court as being the "result of discovery processes," but also as a pleading, in that appellant attached a copy of the entire deposition as an exhibit to his "Response in Opposition to Defendant's Objection to Jurisdiction and Brief in Support." We hold that the evidence is sufficient to support the court's determination that Geotechnical did not have sufficient contacts with Texas to afford Texas courts jurisdiction over this case without a violation of its right to due process. We overrule points of error numbers one through five.

The judgment of the trial court dismissing this cause for want of jurisdiction is affirmed. Costs are charged against appellant.