TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00664-CV







Intertek Corp., Appellant



v.



Richard R. Rowell, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT


NO. 97-02532, HONORABLE MARY PEARL WILLIAMS, JUDGE PRESIDING








 Intertek Corp., a Taiwanese corporation, appeals from a trial-court order that
overrules Intertek's plea of no personal jurisdiction urged in a special appearance filed and
determined in due order under Rule 120a. See Tex. R. Civ. P. 120a (1999); see also Tex. Civ.
Prac. & Rem. Code Ann. § 51.014(a)(7) (West Supp. 1999). We will affirm the order. Because
the state of the appellate record dictates our decision, we will summarize it at some length.


THE PLEADINGS


 The parties apparently agree that Intertek is a Taiwanese corporation with its
principal place of business in Taipei.

 In a Fourth Amended Original Petition, Richard R. Rowell named three
defendants:  Amperor, Inc., a Texas corporation, Intertek, and Roch-Chian Ho, a shareholder and
a "manager" or executive officer of both corporations. (1) Rowell alleged causes of action for
breach of contract, liability based on the doctrines of quantum meruit and promissory estoppel,
and fraud. These causes of action allegedly arose out of Rowell's employment by Amperor, a
supplier of certain computer "hardware," and Amperor's failure to pay Rowell sales commissions
allegedly owed under his employment contract. Intertek manufactured the "hardware."

 Concerning Intertek, Rowell alleged the following jurisdictional facts:  (1) Intertek
itself had sufficient "minimum contacts" with Texas to satisfy traditional notions of fair play and
substantial justice; (2) Intertek had purposefully availed itself of the privileges and benefits of
conducting business in Texas; (3) Intertek's contacts with Texas were continuous and systematic;
(4) these included placing goods it had manufactured into the stream of commerce with the
knowledge or expectation that they would be purchased by Texas consumers; (5) Intertek operated
Amperor in Texas as a "captive distributor" and sales agent to establish "channels" for marketing
Intertek goods and to provide Intertek customers with regular post-purchase advice regarding the
items they had purchased; (6) Intertek and Amperor operated under a common ownership; (7)
Intertek controlled Amperor's business and operations for Intertek's own benefit and for their joint
benefit; (8) Amperor was merely a device through which Intertek obtained Amperor's "gross
revenues" as that term was defined in Rowell's employment contract with Amperor in order to
measure his commissions; and, alternatively, (9) the conduct of the three defendants amounted to
an actionable fraud committed in Texas. (2)

 In its special-appearance plea, Intertek alleged it was not subject to process issued
by a Texas court because:  (1) Intertek was not a resident of Texas but rather a Taiwanese
corporation having its principal place of business in Taipei; (2) Intertek had not purposely
established the requisite minimum contacts with Texas; (3) Intertek had not committed a tort in
Texas; (4) Intertek did not maintain a place of business in Texas; (5) the conduct alleged in
Rowell's petition did not arise out of any Intertek activity in Texas; (6) Intertek itself never
contracted with Rowell or employed him; and (7) assumption of personal jurisdictional over
Intertek by a Texas court would offend traditional notions of fair play and substantial justice and
deprive Intertek of due process of law under the federal and state constitutions. Intertek requested
a hearing in connection with its special appearance and its motion to dismiss for want of
jurisdiction. (3)

THE HEARING


 Intertek's request for dismissal of the suit, based on its special-appearance
allegations, was heard October 8, 1998. The reporter's record of the hearing appears in our
appellate record. It reveals that counsel for Intertek and Rowell made extensive legal argument
from the following discovery documents, parts of which they paraphrased and summarized in their
argument:  (1) parts of the deposition testimony of Roch-Chian Ho (sole shareholder and chief
executive officer of Amperor, owner of the largest block of Intertek shares, chairman of the
Intertek board of directors, and an executive officer or "manager" of Intertek), Joanna Chang
(chief financial officer of Intertek), Russell Randall (Amperor employee), and Rowell; (2)
Amperor's answers to written interrogatories propounded by Rowell; (3) invoices bearing the
heading "Intertek/Amperor"; (4) "Dun and Bradstreet" reports pertaining to Intertek and
Amperor; (5) Amperor's 1996 federal income-tax return; and (6) an advertising brochure or
organization chart referred to as a "corporate overview" of the relationship between Amperor and
Intertek. Save for the items next to be noted, none of these documents were offered in evidence
at the hearing.

 The only evidence offered and received at the hearing consists of the following
excerpts read into the reporter's record from the deposition testimony of Roch-Chian Ho:

Q: What is the relationship between Intertek and Amperor, Texas?


A: Basically Amperor, Texas was originally set up to help provide a service to
Intertek to support Intertek's interest in the US. For example, after sale and
customer support interface type of issue.


* * * * *



Q: [Counsel failed to read question into record]


A: The main function of Amperor, Texas is to try to provide a local support and
provide the local, you know, interface, inventory management for Intertek.


* * * * *



Q: [Counsel failed to read question into record]


A: Yeah. We--prior to that we have a--during the Intertek time we've already
started selling the equipment to US. . . . We begin to learn in order to
promote our business here, as far as business, is to have extra--so initially we
go through rep system.


* * * * *



Q: [Counsel failed to read question into record]


A: Yes, correct. Except in this situation Amperor, Texas is a--its kind of a
captive to Intertek. Regardless if it conducts a sale or not, all [Amperor]
expenses need to be paid by Intertek.



The reporter's record contains no oral testimony from a live witness and no further extracts from
a deposition or answers to interrogatories.


THE BASIS FOR DECISION


 There being in the record no applicable stipulations between the parties, the trial
court was required to decide the question of personal jurisdiction on the basis of the pleadings
outlined previously, the brief testimony read into the record from Roch-Chian Ho's deposition,
and "the results of discovery processes." Tex. R. Civ. P. 120a(3).

 About two months after the special-appearance hearing on October 8, 1998, Rowell
filed in the trial court a motion requesting that the following documents be included in the
reporter's record:  (1) the entire transcript from Roch-Chian Ho's deposition; (2) Intertek's
answers and objections to written interrogatories propounded by Rowell; (3) an invoice headed
"Intertek/Amperor," dated January 4, 1996; (4) the "corporate overview" mentioned above; and
(5) a "Dun and Bradstreet Report" pertaining to Intertek and Amperor, dated January 23, 1997. 
In support of his motion, Rowell stated the five items were the products of discovery, obtained
from Amperor, and had been offered in evidence at the hearing. The reporter's record, beyond
any doubt, shows they had not been offered in evidence. The trial court, accordingly, overruled
Rowell's motion to include the five items in the reporter's record. In its order, however, the court
directed that the five items be included in the clerk's record and they come to us, on appeal, in
that form. Intertek does not complain that the items are not properly before this Court; nor does
Intertek contend the five items are not "the results of discovery processes." Tex. R. Civ. P.
120a(3); see Franklin v. Geotechnical Servs., Inc., 819 S.W.2d 219, 223-24 (Tex. App.--Fort
Worth 1992, writ denied).

 The reporter's record also indicates, however, that the trial judge had before her
transcripts of depositions given by Joanna Chang, Russell Randall, and Rowell, other documents
apparently obtained through discovery, and at least one set of answers to written interrogatories,
all of which were referred to by counsel in their legal arguments at the hearing. These results of
discovery processes do not appear in either the clerk's record or as part of the reporter's record. (4) 
The missing documents are vital to appellate review because of the force of Rule 120a(3) and the
principle that limits our consideration of assigned error to the record as it appeared before the trial
court at the time that court made its decision. See, e.g., Noble Exploration, Inc. v. Nixon Drilling
Co., 794 S.W.2d 589, 592 (Tex. App.--Austin 1990, no writ); Irlbeck v. John Deere Co., 714
S.W.2d 54 (Tex. App.--Amarillo 1986, writ ref'd n.r.e.); 6 McDonald & Carlson Texas Civil
Practice § 43.4 at 1109-10 (1998). It appears that neither party requested that the missing
discovery items be included in the appellate record, although the reporter's record clearly
indicates the existence of such documents and their use as a basis for argument at the special-appearance hearing. It was Intertek's burden to assure inclusion of the missing items in the
appellate record. (5) See Walker v. Horine, 695 S.W.2d 572, 579 (Tex. App.--Corpus Christi 1985,
no writ). And we must presume they support the trial-court judgment. See Great American Ins.
Co. v. North Austin Mun. Utility Dist. No. 1, 950 S.W.2d 371 (Tex. 1997); Leggett v. Brinson,
817 S.W.2d 154, 156 (Tex. App.--El Paso 1991, no writ); 6 McDonald & Carlson Texas Civil
Practice § 15:4 at 4426-27 (1998). We will now relate that assumption to Intertek's assignments
of error.

ERRORS ASSIGNED BY INTERTEK


 Under a general assignment of error that "[t]he trial court erred in denying
Intertek's special appearance and holding that Intertek is subject to personal jurisdiction in Texas,"
Intertek argues as follows:  (1) Rowell's petition did not allege any matter from which specific
jurisdiction could be inferred, but only facts from which general jurisdiction might be inferred;
(2) Rowell cannot establish either specific or general jurisdiction because Intertek's only contact
with Texas was to supply goods to Amperor for sale to others; (6) (3) even if sufficient minimum
contacts were shown, assertion of jurisdiction would still offend the constitutional standards of
fair play and substantial justice under a balancing of competing factors, including the factor that
Intertek is an alien corporation operating internationally; and (4) personal jurisdiction over
Intertek on an "alter ego" theory cannot, as a matter of law, be established because Intertek holds
no "financial interest" in Amperor. (7) We need discuss only item four as a basis for personal
jurisdiction over Intertek.

 The financial-interest factor is not the sole criterion for reaching a conclusion that
two corporate entities should, in equity, be treated as one for jurisdictional purposes. The
possibly relevant factors have been listed as follows:


(1) whether distinct and adequately capitalized financial units are incorporated and
maintained; (2) whether daily operations of the two corporations are separate; (3)
whether formal barriers between the management of the two entities are erected,
with each functioning in its own best interest; (4) whether those with whom the
corporations come in contact are apprised of their separate identity; (5) whether the
subsidiary files an income tax return separate from the consolidated return filed by
the parent; (6) common stock ownership; (7) the method and degree of financing 
of the subsidiary by the parent; (8) common directors and officers; (9) separate
books and accounts; (10) common business departments; (11) the extent to which
contracts between the parent and subsidiary favor one or the other; and (12) the
connection of the parent's employee, officer or director to the subsidiary's tort or
contract giving rise to the suit.



Conner v. Conticarriers and Terminals, Inc., 944 S.W.2d 405, 419-20 (Tex. App.--Houston [14th
Dist.] 1997, no writ); see also Old Republic Ins. Co. v. Ex-Im Servs. Corp., 920 S.W.2d 393,
395-96 (Tex. App.--Houston [1st Dist.] 1996, no writ). It is obvious that application of such
factors as these is a question of what the evidence shows or fails to show in a particular case.

 In the present case, the issue was determinable from Ho's testimony read into the
record at the special-appearance hearing, the pleadings, and "the results of discovery processes,"
as pointed out above. See Tex. R. Civ. P. 120a(3). We have in our appellate record the
pleadings, Ho's deposition, and fragments of certain other documents obtained through discovery
processes; but we do not have the depositions of Rowell, Joanna Chang (Intertek's chief financial
officer whom Ho identified as having knowledge of relevant Intertek-Amperor operations), or
Russell Randall (an Amperor employee who would evidently testify as to a damaging admission
made by Ho in Randall's presence). Nor do we have answers to interrogatories propounded by
Rowell.

 There are no findings of fact and conclusions of law. Under the authorities cited
above, we must presume that the missing "results of discovery processes" support whatever
combination of evidentiary findings would justify a trial-court conclusion that Intertek and
Amperor were operated in Texas as a single business enterprise--for jurisdictional purposes at
least, and without prejudice to what may be shown by the full body of evidence developed at trial.

 We therefore affirm the trial-court order.



 

 John E. Powers, Justice

Before Chief Justice Aboussie, Justices Patterson and Powers*

Affirmed

Filed: October 28, 1999

Do Not Publish












* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. Ho testified in deposition that he owned 100% of the outstanding shares of Amperor and
30% of the outstanding shares of Intertek stock, his 30% of the latter being the largest bloc of
Intertek shares held by a single owner. Ho declined to reveal the compensation he received from
Intertek beyond a $50,000 annual salary.
2. It is evident that the jurisdictional facts alleged by Rowell were intended to bring Intertek
within the trial-court jurisdiction under a Texas "long arm" statute and the due-process clause of
the Fourteenth Amendment to the United States Constitution. See U.S. Const. amend. XIV, §
1; Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (West 1997); CSR Ltd. v. Link, 925 S.W.2d 591,
594-95 (Tex. 1996). The allegations attribute the requisite intrastate conduct to Intertek directly
(as itself doing business or committing a tort in Texas) and indirectly by imputing Amperor's
conduct to Intertek on a single-business enterprise theory (operating Amperor as a "captive
distributor," instrument, agent, or conduit, fusing their separate corporate identities for
jurisdictional purposes). See, e.g., Conner v. Conticarriers & Terminals, Inc., 944 S.W.2d 405,
418-20 (Tex. App.--Houston [14th Dist.] 1997, no writ).
3. Intertek's allegations were in reply to Rowell's Second Amended Original Petition,
wherein Intertek was first named a defendant. By the date of the trial-court hearing on Intertek's
special appearance and motion to dismiss, however, Rowell's live pleading was his Fourth
Amended Original Petition, summarized above as to its contents. At the hearing, Intertek elected
expressly "[a]nd specifically" to join issue on "the jurisdictional allegations . . . which are in
[Rowell's] Fourth Amended Petition," a copy of which Intertek had received some time before
the hearing. Concerning Rowell's single-business enterprise allegations, Intertek interposed in
its oral argument and trial-court brief the argument "[t]hat the lack of any financial interest,
ownership, or control" by Intertek precluded imputing Amperor's liability to Intertek. In its brief
to this Court, Intertek makes the same argument against Rowell's Fourth Amended Original
Petition and not his Second Amended Original petition. The latter is not found in our appellate
record and appears not to have been requested for inclusion.
4. Also missing from the record is a Rule 11 agreement between unidentified parties. The
existence of the agreement is indicated by the docket sheet shown in our appellate record. The
docket sheet shows that both Intertek and Amperor filed answers and objections to written
interrogatories propounded by Rowell, but copies of the questions, answers, and objections are
not in the appellate record.
5. Deposition transcripts do not fall within the categories of items that must be included
in the clerk's record, nor is there any indication in our appellate record that either party
designated the missing transcripts for inclusion in the appellate record. See Tex. R. App. P.
34.5(a), (b). The duty of the clerk of this Court extended only to ensuring that the clerk's record
was in compliance with the supreme court's "Order Directing the Form of the Appellate Record
in Civil Cases." See Tex. R. App. P. 37.2.
6. Intertek actually bore the burden of negating all bases of jurisdiction inferrable from
Rowell's pleading. See CSR Ltd., 925 S.W.2d at 596.
7. The record actually does show that Intertek has a "financial interest" in Amperor. It is
inferable from the record, for example, that Intertek subsidizes Amperor's operations in order to
facilitate sales of Intertek goods in Texas and to provide after-purchase advice to purchasers of
those goods. (Intertek pays all of Amperor's operating and other expenses, according to Ho's
deposition.).


Affirmed

Filed: October 28, 1999

Do Not Publish












* Before John E. Powers, Senior Justice (retired),