TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN





ON MOTION FOR REHEARING








NO. 03-03-00477-CV






Arthur Holk and Andy Holk d/b/a Pleasure Motion, Appellants


v.


USA Managed Care Organization, Inc., Appellee







FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY

NO. 266462, HONORABLE ORLINDA L. NARANJO, JUDGE PRESIDING





O P I N I O N




 We withdraw our original opinion and judgment of February 12, 2004 and substitute
the following opinion in which we grant the motion for rehearing.

 USA Managed Care Organization, Inc. (USA) filed suit in Texas against Alabama
residents Arthur Holk and Andy Holk, individuals doing business as "Pleasure Motion," for failing
to fulfill their agreement to provide the use of the boat "Pleasure Motion" to USA for fishing trips. 
The Holks filed a special appearance claiming that because they are not residents of Texas and do
not engage in business in Texas, and because the activities made the basis of USA's claims did not
take place in Texas, they are not subject to the jurisdiction of Texas courts. See Tex. R. Civ. P. 120a. 
After a hearing, the trial court denied their special appearance. The Holks bring this interlocutory
appeal of that denial. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (West Supp. 2004). For
the reasons set forth below, we affirm the trial court's denial of the Holks' special appearance.


BACKGROUND


 In 1994, USA, a Texas corporation with its principal place of business in Austin, (1)
entered into an oral agreement with the Holks, residents of Alabama, to occasionally use their boat
the "Pleasure Motion" for fishing trips. Andy Holk operated the boat and his father, Arthur Holk,
financially backed his son's operation. It is unclear from the record who initiated the contact;
George Bogle, USA's chief executive officer, testified that this agreement probably took place in
Pensacola, Florida, and continued until 1998, when this arrangement lapsed. Andy Holk offered to
pick up Bogle and his guests anywhere on the Gulf Coast, picking them up once in Louisiana and
a few times in Florida. In 1999, Andy Holk called Bogle in Austin to ask if USA wanted to use the
boat again. USA contracted to use the boat in 1999 but not in 2000. In 2001, Andy Holk again
called Bogle in Austin to ask if USA wanted to use the boat. USA agreed and used "Pleasure
Motion" three or four times in 2001, paying a total of $25,000. Again in 2002, Andy Holk called
Bogle in Austin to solicit USA's use of the boat. Holk asked for a $25,000 payment in advance,
which USA sent. All of USA's payments for the use of the boat were from its bank account in
Texas. USA used the boat for a fishing trip one time for three days in May 2002, incurring charges
of $8,494.91.

 After the one fishing trip in May 2002, USA attempted several times to contact Andy
Holk to schedule additional boat trips. Receiving no response, USA sent a demand letter to Andy
Holk for $16,505.09, the balance remaining of its $25,000 prepayment for boat use in 2002. Still
receiving no response, USA filed suit against the Holks in Travis County for breach of contract and
unjust enrichment. The Holks filed a special appearance, attaching affidavits stating that they are
Alabama residents, do not engage in business in Texas, do not actively solicit business in Texas, and
do not visit Texas on a regular basis. They further averred that the events giving rise to the claim
did not take place in Texas because USA was an Arizona company at the time of the initial contact
and the services provided took place in Alabama. The trial court held a hearing on the special
appearance, at which Bogle testified and the Holks presented evidence by affidavit. The trial court
denied the special appearance, and it is from this denial that the Holks bring their interlocutory
appeal.


ANALYSIS


Standard of Review

 The plaintiff bears the initial burden of pleading sufficient allegations to bring a
nonresident defendant within the provisions of the Texas long-arm statute. BMC Software Belgium,
N.V. v. Marchand, 83 S.W.3d 789, 793 (Tex. 2002). A defendant challenging the court's assertion
of personal jurisdiction must negate all jurisdictional bases alleged by the plaintiff. American Type
Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 807 (Tex. 2002). Whether a court has personal
jurisdiction over a defendant is a question of law, which we review de novo. BMC Software, 83
S.W.3d at 794. However, the trial court frequently must resolve questions of fact before deciding
the question of jurisdiction. Id. When, as here, the trial court does not issue findings of fact and
conclusions of law with its special appearance ruling, all facts necessary to support the judgment that
are supported by the evidence are implied. Id. at 795. When the appellate record includes both the
reporter's and clerk's records, however, these implied findings are not conclusive and may be
challenged for legal and factual sufficiency. Id.


Personal Jurisdiction

 The Texas long-arm statute authorizes Texas courts to exercise jurisdiction over a
nonresident defendant that does business in Texas. See Tex. Civ. Prac. & Rem. Code Ann.
§§ 17.041-.044 (West 1997), § 17.045 (West Supp. 2004). The broad language of the "doing
business" requirement in section 17.042 permits the statute to reach as far as the federal
constitutional requirements of due process will allow. Guardian Royal Exch. Assurance, Ltd. v.
English China Clays, P.L.C., 815 S.W.2d 223, 226 (Tex. 1991). Thus, we rely on precedent from
the United States Supreme Court and other federal courts, as well as Texas decisions, to determine
whether the assertion of personal jurisdiction is consistent with the requirements of due process. 
BMC Software, 83 S.W.3d at 795.

 Personal jurisdiction over a nonresident defendant is constitutional when two
conditions are met: (1) the defendant has established minimum contacts with the forum state, and
(2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. 
Id. (citing International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). A nonresident
defendant that has "purposefully availed" itself of the privileges and benefits of conducting business
in the forum state has sufficient contacts to confer personal jurisdiction. Id. (citing Burger King
Corp. v. Rudzewicz, 471 U.S. 462, 474-76 (1985)). A defendant should not be subject to jurisdiction
based on random, fortuitous, or attenuated contacts. Id. (citing Burger King, 471 U.S. at 475).

 The minimum contacts analysis has been refined into two types of
jurisdiction--specific and general jurisdiction. Because USA does not contend that general
jurisdiction exists, we will confine our discussion to specific jurisdiction. Specific jurisdiction exists
when the nonresident defendant's activities have been "purposefully directed" to the forum and the
litigation results from injuries arising out of or relating to those activities. Guardian Royal, 815
S.W.2d at 228. The minimum contacts analysis for specific jurisdiction is somewhat narrow,
focusing on the relationship among the defendant, the forum, and the litigation. Id.; Schlobohm v.
Schapiro, 784 S.W.2d 355, 357 (Tex. 1990). "It is the quality and nature of the defendant's contacts,
rather than their number, that is important to the minimum-contacts analysis." American Type, 83
S.W.3d at 806 (citing Guardian Royal, 815 S.W.2d at 230 n.11).

 Texas employs a three-part test to determine whether there is specific jurisdiction:


(1) The nonresident defendant or foreign corporation must purposefully do some act
or consummate some transaction in the forum state;


(2) The cause of action must arise from, or be connected with, such act or
transaction; and


(3) The assumption of jurisdiction by the forum state must not offend traditional
notions of fair play and substantial justice, consideration being given to the
quality, nature, and extent of the activity in the forum state, the relative
convenience of the parties, the benefits and protection of the laws of the forum
state afforded the respective parties, and the basic equities of the situation.

Schlobohm, 784 S.W.2d at 358 (citing O'Brien v. Lanpar Co., 399 S.W.2d 340, 342 (Tex. 1966)). 
These requirements ensure that a nonresident will be "haled" into court only as a result of intentional
activities, so that it is reasonable for the nonresident defendant to expect the call of a Texas court. 
See Guardian Royal, 815 S.W.2d at 226; Schlobohm, 784 S.W.2d at 357-58.

 At the outset, we reject USA's argument that the Holks waived any jurisdictional
defects by failing to file a motion to quash. As USA properly states, a special appearance is "for the
purpose of objecting to the jurisdiction of the court over the person or property of the defendant on
the ground that such party or property is not amenable to process issued by the courts of this State." 
Tex. R. Civ. P. 120a. A motion to quash, on the other hand, is the proper vehicle for objecting to
jurisdictional defects. Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 203 (Tex. 1985). 
Because the Holks objected to personal jurisdiction, not to jurisdictional defects in USA's pleading,
they properly filed a special appearance. We now turn to an examination of whether the defendants
were subject to the jurisdiction of a Texas court.


Specific Jurisdiction

 The first Schlobohm prong requires that the Holks have purposefully done some act
or consummated some transaction in Texas. See Schlobohm, 784 S.W.2d at 358. The relevant facts
are that Andy Holk called USA on the telephone three times over four years to solicit its rental of
the boat and offered to pick USA up in the boat anywhere along the Gulf Coast. (2) 

 These facts are similar to those in Rynone Manufacturing Corp. v. Republic
Industries. The defendant, Rynone, solicited Republic's business over the telephone. 96 S.W.3d
636, 639 (Tex. App.--Texarkana 2002, no pet.). However, Rynone additionally advertised in
national trade magazines. See id. In Rynone, the parties' relationship began via a telephone
solicitation, whereas here the initiation of the parties' relationship is unclear. We find this
distinction insignificant, especially because the Holks and USA's prior arrangement had ceased in
1998, and the Holks later renewed a business relationship by soliciting USA's business over the
telephone in Texas. The important similarity is that the contracts sued upon in each case were the
result of telephone solicitation by the defendants. See Rynone, 96 S.W.3d at 640 ("Rynone
purposefully called Republic to solicit its business and [] this lawsuit ultimately traces back to that
telephone call."). The court stated: "Here, Rynone advertised in a national trade publication and
personally solicited Republic over the telephone, an even more purposeful act than advertising in
a Texas telephone directory." Rynone, 96 S.W.3d at 639-40 (emphasis added) (citing Siskind v. Villa
Found. for Educ., Inc., 642 S.W.2d 434 (Tex. 1982)). The Rynone court made this conclusion in
light of the supreme court's statement in Siskind that "Villa's decision to advertise in Texas
telephone directories, in and of itself, is a sufficiently purposeful act that is done in Texas." Siskind,
642 S.W.2d at 436 (emphasis added). If telephone-directory advertising in Texas is enough on its
own, and if a phone solicitation is "even more purposeful" than telephone-directory advertising, then
the Rynone court concluded that personal solicitation over the telephone, alone, is a sufficiently
purposeful act subjecting the defendant to personal jurisdiction. See Rynone, 96 S.W.3d at 640. We
agree.

 The Beechem opinion from this Court also supports the exercise of personal
jurisdiction over the Holks. See Beechem v. Pippin, 686 S.W.2d 356, 361-62 (Tex. App.--Austin
1985, no writ). There, the out-of-state Pippin solicited a contract over the telephone to lease a
machine from Texas-resident Beechem. Id. at 361. Pippin also sent payments to Beechem in Texas. 
Id. The Court concluded that by soliciting Beechem's business and partially performing the contract
by sending payment, Pippin purposefully availed itself of the privilege of conducting activities within
Texas, thus invoking the benefits and protections of its laws. Id. at 361-62. "Moreover, it was
certainly foreseeable that the contacts might result in litigation, and that the citizens of this State
were to some degree put at risk by [Pippin] entering into and performing the contract or not
performing it." Id. (3)

 The Beechem court cited McGee v. International Life Insurance Co., in which the
United States Supreme Court held that an insurer's act of sending to an insured in California a
reinsurance contract was sufficient to subject it to the jurisdiction of the California courts--despite
the insurer's never having solicited or done any other insurance business in California. 355 U.S.
220, 223 (1957), cited in Beechem, 686 S.W.2d at 362. We are unable to distinguish the nature of
the contacts here from those in Beechem and McGee.

 Cases cited by the Holks for the proposition that simply contracting with a Texas
resident is not sufficient are distinguishable. In TeleVentures, Inc. v. International Game
Technology, 12 S.W.3d 900, 908-09 (Tex. App.--Austin 2000, pet. denied), the Texas-based
plaintiff TeleVentures contacted and visited International Game Technology in Nevada, and
ultimately the parties signed agreements for International Game to develop some gaming systems
for TeleVentures. However, the contracts did not state where either party would perform its
obligations. Communication between the parties occurred between Texas and other states, but no
representatives of International Game ever came to Texas. This Court held that such actions by
International Game did not amount to sufficiently purposeful conduct. Id. at 910. By contrast, here
the Holks had offered to perform the contract in Texas by picking up USA's representatives
anywhere along the Gulf Coast and had repeatedly called a Texas business to ask it to renew its
rental agreement. 

 In 3-D Electric, a third entity--whose corporate identity the court refused to merge
with the defendant's for purposes of jurisdiction--had initially solicited the contract with 3-D
Electric, and the defendant had thereafter served as the general contractor and entered into the
contract via phone negotiations with the plaintiff in Texas. See 3-D Elec. Co., Inc. v. Barnett Const.
Co., 706 S.W.2d 135, 142 (Tex. App.--Dallas 1986, writ ref'd n.r.e.). All construction work was
done in Trinidad, and all meetings were conducted outside of Texas. Id. The 3-D court said that "In
Beechem, there were clearly more contacts with Texas than in the instant case and thus the '[n]arrow
factual distinctions . . . sufficed to swing the due process pendulum.'" Id. at 143. Unlike the Holks,
the defendant in 3-D Electric did not solicit the contract; we find this distinction significant. 
Similarly, in Blair Communications, Inc. v. SES Survey Equipment Services, Inc., 80 S.W.3d 723,
730 (Tex. App.--Houston [1st Dist.] 2002, no pet.), the parties were put into contact with each other
by a third party, after which the defendant followed up by sending a contract to the plaintiff; the
contract was performed outside of Texas, and payment was mailed to Texas. The court held that the
facts were similar to those in 3-D and refused to find personal jurisdiction. Id. at 730. Unlike these
cases, the Holks directly solicited USA's business over the telephone by calling its Austin offices
three times in three years to renew the parties' agreement.

 Even though simply contracting with a Texas resident, alone, is not enough, see
Burger King, 471 U.S. at 478, here there are more intentional acts: active solicitation of USA's
renewal of business over the telephone, offering to pick up USA along the Texas coast, and receipt
of payment by the Holks drawn upon a Texas bank account. (4) Prior negotiations, contemplated future
consequences, the terms of the contract, and the parties' actual course of dealing must be evaluated
in determining whether the defendant purposefully established minimum contacts within the forum. 
Burger King, 471 U.S. at 479. The oral contract between USA and the Holks allowed USA to
demand performance in Texas. USA presented evidence that the Holks solicited its business over
the telephone on three separate occasions and offered to perform the contract in Texas. We conclude
that this is sufficient to demonstrate that the Holks purposefully consummated a transaction in Texas,
and the Holks have not negated jurisdiction on this basis.

 The facts easily satisfy the second Schlobohm prong because USA's breach-of-contract cause of action is related to the Holks' act in soliciting USA's business. See 3-D Elec., 706
S.W.2d at 141 (breach-of-contract action related to act of making oral contract by initiating phone
call to Texas); Beechem, 686 S.W.2d at 361-62 (cause of action for breach of contract arose from
or was related to contacts with Texas because contract was solicited in Texas) (citing McGee, 355
U.S. 220).

 Regarding the third Schlobohm prong, we conclude that subjecting the Holks to the
jurisdiction of the Texas courts does not offend traditional notions of fair play and substantial justice. 
Having actively and successfully solicited USA's continued business in Texas, it is not unreasonable
to require the Holks to defend a suit based on their contacts with Texas. Although the quantity of
the Holks' contacts with Texas may be minimal, the qualities of those contacts are substantial. See
Siskind, 642 S.W.2d at 437. Only in rare cases will the exercise of jurisdiction not comport with fair
play and substantial justice when the nonresident defendant has purposefully established minimum
contacts with the forum state. Guardian Royal, 815 S.W.2d at 231 (citing Burger King, 471 U.S.
at 477-78).


[W]here a defendant who purposefully has directed his activities at forum residents
seeks to defeat jurisdiction, he must present a compelling case that the presence of
some other considerations would render jurisdiction unreasonable. Most such
considerations usually may be accommodated through means short of finding
jurisdiction unconstitutional. For example, the potential clash of the forum's law
with the "fundamental substantive social policies" of another State may be
accommodated through application of the forum's choice-of-law rules. Similarly, a
defendant claiming substantial inconvenience may seek a change of venue.


Burger King, 471 U.S. at 477 (emphasis added and footnotes omitted). The Holks have not made
a compelling case to render jurisdiction over them unreasonable or unfair, and we hold that the trial
court properly denied their special appearance. We overrule the Holks' sole issue.


CONCLUSION


 The Holks' solicitation of USA's business over the telephone on three occasions, in
addition to their offer to perform the contract in Texas, was sufficiently purposeful to subject them
to the jurisdiction of the Texas courts, and jurisdiction over them does not offend traditional notions
of fair play and justice. Accordingly, we affirm the trial court's denial of the Holks' special
appearance.



 

 Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson: Opinion by Justice B. A. Smith;

 Dissenting Opinion by Justice Patterson


Affirmed


Filed: July 15, 2004

1. It is unclear from the record whether USA was a Texas corporation at the time of the
original agreement between USA and the Holks. At that time, USA may have been a Delaware
corporation with its headquarters in Arizona, but it moved its headquarters to Texas sometime in
1994. However, during the relevant actions here--the Holks' solicitation of USA's renewal
business--USA was a Texas corporation headquartered in Austin.
2. The prior arrangement between the parties, ending in 1998, bears little, if any, significance
to the determination of whether soliciting USA's renewal business over the telephone was
purposefully directed at Texas.
3. After deciding that Pippin's actions were sufficiently purposeful for Texas to exercise
jurisdiction over it, the Court noted other contacts Pippin had with Texas: mail correspondence sent
to Beechem, a payment mailed to Beechem's Texas office, Pippin's payment for the transfer of the
machine to and from Texas, and Pippin's causing its insurance agent to contact Beechem in Texas
to arrange coverage for the machine. Beechem v. Pippin, 686 S.W.2d 356, 362 (Tex. App.--Austin
1985, no writ). However, the Court had already decided the jurisdictional question, mentioning these
contacts as an aside. See id. Moreover, we find the sum total of all the contacts in Beechem no
greater or more purposeful than those here.
4. Although not dispositive, the record also indicates that Andy Holk had been to USA's
Austin office, and that the boat had picked up other parties at Texas ports.