**Revised June 9, 1999**

**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**

_____

97-50709

_____

ELECTROSOURCE, INC.,

Plaintiff-Appellant,

versus

HORIZON BATTERY TECHNOLOGIES, Limited,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas

_____

May 24, 1999

Before WIENER and DENNIS, Circuit Judges.[*]

DENNIS, Circuit Judge:

Electrosource, Inc. ("Electrosource") appeals the district court's dismissal of its suit against Horizon Battery Technologies Limited ("HBTL") for lack of personal jurisdiction. Concluding that Electrosource has established a *prima facie* case that HBTL is subject to in personam jurisdiction in Texas, we reverse and

_____

[*]Judge John Minor Wisdom was a member of the original oral argument panel that heard this case, but he died on May 15, 1999. This matter is being handled by a quorum. 28 U.S.C. § 46(d).

remand.

FACTS AND PROCEDURAL HISTORY

Electrosource Inc., a Delaware corporation with its principal place of business in Texas, is the owner and licensor of an electrical storage battery known as the "Horizon Battery." Electrosource developed its patented battery technology in Texas.

In 1993, Electrosource participated in discussions with Metropolitan Industries, Inc. ("Metropolitan"), an Indian company, concerning the purchase of a license permitting the manufacture and distribution of the Horizon Battery in India and Asia. These discussions led to the parties signing a preliminary Memorandum of Understanding. The Memorandum of Understanding provided that Electrosource and Metropolitan had agreed to create a joint venture agreement in the future. Ultimately, however, the parties did not fulfill the agreement and a joint venture was not created at that time.

Thereafter, licensing discussions resumed between Electrosource and HBTL, another Indian company apparently affiliated with Metropolitan. HBTL was not licensed to do business in Texas and had no offices, agents, or employees in Texas. During this round of negotiations, six different HBTL representatives made a series of six trips from India to Texas. Furthermore, during the negotiations, correspondence was sent from India to Electrosource in Texas. As before, these negotiations centered around licensing the Horizon Battery technology that was developed in Texas.

2

The fruit of these extensive negotiations was a "Know-How License Agreement" ("Agreement") that was signed by both Electrosource and HBTL in Texas in 1994. The Agreement specifically provided that confidential know-how would be provided to HBTL at the offices of Electrosource in Texas and HBTL employees and consultants would be trained in Texas in matters associated with the Horizon Battery. Although the choice-of-law clause called for Indian law to govern the agreement, the parties agreed that the laws of Texas governed the arbitration clause of the Agreement. Additionally, the Agreement included a provision that allowed Electrosource to inspect HBTL's manufacturing facilities in order to maintain uniformity and quality control for the duration of the license.

The Agreement directed that a number of implementation agreements had to be negotiated and executed before licensing would take place. The Agreement also required HBTL to pay a licensing fee and obtain a Letter of Credit to secure the fee. The parties also expressly provided in the Agreement that unless these conditions precedent were fulfilled within one year after its signing, the Agreement was to have no force and effect.

Soon after the Agreement was executed, Electrosource began preparation of the preliminary design review ("PDR") in Texas. The items to be presented in the PDR were preliminary versions of controlling documents, such as the Quality Assurance Plan, Equipment Design and Procurement Plan, Construction Project

Management Plan and a Cost Pricing Analysis.  The PDR was a necessary predicate to the implementation agreements.  In the meantime, HBTL made several payments for various equipment and testing devices to Electrosource at its bank in Texas.  HBTL, however, only made partial payments for the work completed in Texas.  Because HBTL did not make full payment, Electrosource did not complete the PDR.  After a year passed, Electrosource decided that the Agreement had been terminated because HBTL had not complied with any of the condition precedents.

HBTL responded by demanding that Electrosource either perform the contract or pay five million dollars in damages.  HBTL also threatened to invoke the arbitration clause in the Agreement and implied that it was the licensee of the Horizon Battery.  Electrosource filed a petition in Texas state court for a declaratory judgment that the Agreement had no force and effect.  After the case was removed by HBTL, the district court granted HBTL's motion to dismiss Electrosource's action for want of in personam jurisdiction over HBTL.  Electrosource appealed.

STANDARD OF REVIEW

Absent any dispute as to the relevant facts, whether in personam jurisdiction can be exercised over a defendant is a question of law and subject to *de novo* review.  <u>Ruston Gas Turbines, Inc. v. Dondaldson Co., Inc.</u>, 9 F.3d 415, 418 (5th Cir.

4

1993).  When jurisdictional facts are disputed, all factual conflicts are resolved in favor of the party seeking to invoke the court's jurisdiction.  <u>Id</u>.


IN PERSONAM JURISDICTION

To exercise personal jurisdiction over a nonresident defendant, two requirements must be met.  First, the nonresident defendant must be amenable to service of process under a State's long-arm statute.  <u>Jones v. Petty-Ray Geophysical, Geosource, Inc</u>., 954 F.2d 1061, 1067 (5th Cir. 1992).  Second, the assertion of in personam jurisdiction must be consistent with the 14th Amendment's due process clause.  <u>Id</u>.  Because Texas' long-arm statute has been interpreted to extend to the limits of due process, we need only determine whether subjecting HBTL to suit in Texas would offend the due process clause of the 14th Amendment.  <u>Schlobohm v. Schapiro</u>, 784 S.W.2d 355, 357 (Tex. 1990).

Due process requirements are satisfied when personal jurisdiction is asserted over a nonresident corporate defendant that has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316, 66 S.Ct. 154, 158 (1945), *quoting* <u>Milliken v. Meyer</u>, 311 U.S. 457, 463, 61 S.Ct. 339, 343 (1940).

MINIMUM CONTACTS

The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which the individual has established no meaningful "contacts, ties, or relations." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183 (1985), *citing* International Shoe, 326 U.S. at 319, 66 S.Ct. at 159. In requiring that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign," Shaffer v. Heitner, 433 U.S. 186, 218, 97 S.Ct. 2569, 2587 (1977) (Stevens, J., concurring), the Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." Burger King, 471 U.S. at 474, 105 S.Ct. at 2183, *citing* World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567 (1980).

Where a forum seeks to assert specific jurisdiction over a nonresident defendant who has not consented to suit there, this "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum, Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S.Ct. 1473, 1478 (1984), and the litigation results from alleged injuries that "arise out of or relate to" those activities. Burger King, 471 U.S. at 472, 105 S.Ct. at 2182.

In determining when a potential defendant should "reasonably anticipate" out-of-state litigation, the court frequently has drawn from the reasoning of Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-40 (1958):

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but <u>it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws</u>.

Id., *citing* International Shoe, 325 U.S. at 319, 66 S.Ct. at 159. (Emphasis added).

The Supreme Court stated that this purposeful availment element "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" Burger King, 471 U.S. at 475, 105 S.Ct. at 2183. The contacts with the forum State must be such that it is foreseeable that the defendant "should reasonably anticipate being haled into court there." World-Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. at 567.

A contract with an out-of-state party alone, although relevant, does not automatically establish sufficient minimum contacts. Burger King, 471 U.S. at 478, 105 S.Ct. at 2185. A "highly realistic" approach is called for, recognizing that a contract is ordinarily but an intermediate step serving to tie up prior negotiations and future consequences which themselves are the real object of the business transaction. Id. The factors of prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum. Id.

As in the franchise transaction in Burger King, the actual course of dealing between Electrosource and HBTL involved wide reaching contacts and contemplated future consequences within the forum state. HBTL was attempting to acquire technology from Electrosource in Texas for the establishment of manufacturing centers in India. As an essential part of the Agreement Electrosource contracted to train HBTL employees, aid in designing HBTL's manufacturing facilities, provide technical support and regulate quality control of HBTL's products. Electrosource and HBTL planned to participate in each of these functions either wholly or in substantial part in Texas.

HBTL sent several employees and documentation to Texas during the extensive negotiations of the Agreement. At least six different representatives of HBTL made a series of six trips to

8

Texas from India for negotiations and planning. HBTL employees came to Texas and joined Electrosource in the laborious process of creating and compiling the PDR. Furthermore, the parties contemplated that the PDR would be fully completed in Texas, and HBTL took significant action toward this end in Texas before the Agreement was terminated. Therefore, we conclude that through the negotiations, consummation, and partial performance of the Agreement with Electrosource, HBTL purposefully availed itself of the privilege of conducting activities within Texas invoking the benefits and protections of its laws. Hanson, 357 U.S. at 253, 78 S.Ct. at 1239-40 (1958). As a result of its actions related to the Agreement, HBTL engaged in such "continuing and wide-reaching contacts" with Electrosource in Texas, and committed itself to such future contacts in the forum, that it should reasonably have anticipated being haled into court there. Burger King, 471 U.S. at 480, 105 S.Ct. at 2186.

In dismissing the claim against HBTL for lack of personal jurisdiction, the district court relied heavily upon this Court's decisions in Hydrokinetics, Inc. v. Alaska Mechanical, Inc., 700 F.2d 1026 (5th Cir. 1983) and Jones v. Petty-Ray Geophysical, Geosource, Inc., 954 F.2d 1061 (5th Cir. 1992). In citing these cases, the district court emphasized two factors in finding a lack of personal jurisdiction: (1) the choice-of-law clause provided that Indian law governed the Agreement and (2) the expected place of manufacture of the batteries by HBTL was in India. These

9

decisions rested on facts dissimilar to those of the present case, however, and do not govern our conclusions here.

In Hydrokinetics, an Alaskan corporation, Alaska Mechanical, purchased equipment from a Texas corporation. In negotiations for the purchase, some of the employees of Alaska Mechanical came to Texas and visited the plant to inspect the equipment. The contract, which was a purchase order, stated that Alaskan law would apply. Upon attempted delivery of the equipment in Alaska, Alaska Mechanical rejected it as unsuitable. The Texas corporation sued Alaska Mechanical in Texas for breach of the purchase agreement. This court stated that it was "significant that only a single transaction is involved in this case, governed by Alaska law, which is [Alaska Mechanical's] sole contact with the state." Id. at 1029. Furthermore, we stated that "no performance by Alaska Mechanical was to take place in Texas, other than perhaps the payment for the goods." Id.

The district court in the present case cited Hydrokinetics in placing decisive weight on the requirement of the choice-of-law clause that Indian law would govern. But, the Supreme Court has indicated that a choice-of-law provision should neither be ignored nor considered sufficient alone to confer jurisdiction. Burger King, 471 U.S. at 482, 105 S.Ct. at 2187. Thus, the choice-of-law clause is one factor among others that may determine whether the forum State has jurisdiction over a nonresident defendant. Accordingly, in Hydrokinetics, this Court took into consideration

10

not only the choice-of-law clause, but also the fact that the contract at issue was simply a sale of a product, and that all foreseeable contacts were to cease after delivery, in finding that Alaskan Mechanical did not have minimum contacts with Texas.

In the present case, although the Agreement contained a choice-of-Indian-law clause, the multitude of contacts between HBTL and Texas substantially outweighs the law choice factor. The Agreement calls for an acquisition of knowledge, skill and technology that envisions "continuing and wide-reaching contacts" by HBTL with Electrosource in Texas. Burger King, 471 U.S. at 480, 105 S.Ct. at 2186. The parties contemplated Electrosource's training of HBTL personnel in Texas, Electrosource's providing assistance and advice in design of manufacturing facilities to HBTL in Texas, and Electrosource's monitoring of HBTL's product uniformity and quality control through activities in both Texas and India. Furthermore, even though the Agreement provided that Indian law would govern generally, the parties stipulated that Texas law was to apply to disputes settled by arbitration. Thus, HBTL purposefully invoked the benefits of Texas' laws in many respects. Burger King, 471 U.S. at 482, 105 S.Ct. at 2187.

In Petty-Ray Geophysical, the plaintiff brought a wrongful death action in Texas against Petty-Ray Geophysical, Geosource, Inc. ("Geosource"), an international corporation with an office in Texas. The plaintiff alleged that her husband had been killed while he was employed by Geosource in the Democratic Republic of

11

Sudan.   Geosource attempted to implead a French corporation, Total Exploration, as a third-party defendant.   The district court held that it did not have personal jurisdiction over Total Exploration and dismissed the third-party claim.   We affirmed.   *Petty-Ray Geophysical*, 954 F.2d at 1070.

The present case is distinguishable from *Petty-Ray Geophysical* because in that case Total Exploration, the French third-party defendant, had only attenuated contacts with Texas.   In <u>Petty-Ray Geophysical</u> we stated that:

> With regard to performance under the contract between Total Exploration and Geosource, the only Texas activity that Plaintiff has shown is unilateral activity by Geosource.  ... Total Exploration negotiated with Geosource's United Kingdom office for exploration work in the Sudan, and the fact that Geosource has a Houston office is nothing more than a mere fortuity.

<u>Id</u>., 954 F.2d at 1068-69.

On the other hand, HBTL purposefully initiated multiple continuing contacts with Electrosource in Texas for the purpose of acquiring the know how and the franchise to make the Horizon batteries in India.   The contacts that accompanied the Agreement between HBTL and Texas cannot "be viewed as 'random,' 'fortuitous,' or 'attenuated.'" <u>Burger King</u>, 471 U.S. at 480, 105 S.Ct. at 2186. HBTL sought out Electrosource for a particular technology that had

12

been developed in Texas, negotiated for its acquisition in Texas, entered into an agreement for the transfer of technology in Texas, and began the process of training, designing, and preparation in Texas necessary to the transfer of the technology. These contacts display that HBTL purposefully availed itself of the privilege of conducting activities within Texas, thus invoking the benefits and protections of its laws. Burger King, 471 U.S. at 475, 105 S.Ct. at 2183. HBTL's purposeful, multiple and continuing contacts with Electrosource in Texas cannot be ignored simply because HBTL's unsuccessful plan was to use Electrosource's Texas technology to make Horizon batteries in India.

Moreover, the district court's reliance on language in Petty-Ray Geophysical for the proposition that the place of the performance of a contract is automatically determinative of whether or not a forum has jurisdiction over a non-resident defendant was misguided. The Supreme Court long ago rejected the notion that personal jurisdiction might turn on "mechanical" tests or on "conceptualistic ... theories of the place of contracting or of performance." Burger King, 471 U.S. at 478, 105 S.Ct. at 2185, *citing* Hoopeston Channing Co. v. Cullen, 318 U.S. 313, 316, 63 S.Ct. 602, 605 (1943).


FAIRNESS

After concluding that HBTL had sufficient contacts with

13

Electrosource in Texas to warrant in personam jurisdiction, we must now decide if it is fair to force HBTL to litigate in Texas. The imposition of jurisdiction cannot offend "traditional notions of fair play and substantial justice." International Shoe, 326 U.S. at 316, 66 S.Ct. at 158.

> The factors we consider in the fairness analysis are:
> [(1) t]he burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies"; and (5) "the shared interest of the several States in furthering fundamental substantive social policies."

Wilson v. Belin, 20 F.3d 644, 647, n.3 (5th Cir.), *cert. denied*, 513 U.S. 930, 115 S.Ct. 322 (1994).

The burden on HBTL of litigating in Texas may be considerable. However, HBTL voluntarily came to Texas, negotiated, entered the Agreement and began to participate in the performance of the contract in Texas. Additionally, HBTL made payments to Texas banks, and HBTL's representatives also visited Texas and joined Electrosource in performing work on the PDR.

Undoubtedly, the most efficient forum for the resolution of this conflict would be Texas. Even though Indian law will be used in interpreting the Agreement, the vast majority of the witnesses

14

will be found in Texas, the partial preparation for and termination of the PDR occurred in Texas, HBTL employees were trained in Texas, partial payments to Electrosource were made through a Texas bank, and other evidence concerning the alleged breach is located in Texas. Indeed, HBTL may suffer an inconvenience in defending a suit in Texas, but not a burden that amounts to a denial of due process. *See* McGee v. International Life Insurance Co., 355 U.S. 220, 224, 78 S.Ct. 199, 201 (1957).

## CONCLUSION

For the reasons assigned, we conclude that Electrosource has made a *prima facie* case that HBTL is subject to in personam jurisdiction in Texas. Therefore, the order entered by the district court granting HBTL's motion to dismiss for lack of in personam jurisdiction is reversed and the case is remanded for proceedings consistent with this opinion.

REVERSED and REMANDED.