# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-03-00477-CV

---

**Arthur Holk and Andy Holk d/b/a Pleasure Motion, Appellants**

**v.**

**USA Managed Care Organization, Inc., Appellee**

---

### FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY
### NO. 266462, HONORABLE ORLINDA L. NARANJO, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

USA Managed Care Organization, Inc. ("USA") filed suit in Texas against Alabama residents Arthur Holk and Andy Holk, individuals doing business as the boat "Pleasure Motion," for failing to fulfill their agreement to provide the use of the boat to USA for fishing trips. The Holks filed a special appearance claiming that because they are not residents of Texas, do not engage in business in Texas, and the activities made the basis of USA's claims did not take place in Texas, they are not subject to the jurisdiction of Texas courts. Tex. R. Civ. P. 120a. After a hearing, the trial court denied their special appearance. It is from this denial that the Holks bring this interlocutory appeal. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (West Supp. 2004). For the reasons set forth below, we reverse the trial court's denial of the Holks' special appearance, render

judgment granting their special appearance, and order dismissal of USA's suit for lack of personal jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1994, USA, a Texas corporation with its principal place of business in Austin,[1] entered into an oral agreement with the Holks, residents of Alabama who own a boat, the "Pleasure Motion," to use the boat occasionally for fishing trips. Andy Holk operated the boat, and his father, Arthur Holk, backed his son's operation. It is unclear from the record who initiated the contact, but, according to the testimony of USA's chief executive officer, George Bogle, this agreement probably took place in Pensacola, Florida, and continued until 1998. In 1999, Andy Holk called Bogle in Austin to ask if USA wanted to use the boat again. USA did so in 1999 but not in 2000. In 2001, Andy Holk called Bogle again in Austin to make arrangements for USA to use the boat. USA did so three or four times in 2001, paying a total of $25,000. Again in 2002, Andy Holk called Bogle in Austin to talk about arranging fishing trips. Holk asked for a $25,000 payment in advance, which USA sent. USA used the boat for a fishing trip one time for three days in May 2002, incurring charges of $8,494.91. All of USA's payments for the use of the boat were from its bank account in Texas. Andy Holk offered to pick up Bogle and his guests anywhere on the Gulf Coast, picking them up once in Louisiana and a few times in Florida.

---

[1] It is unclear from the record whether USA was a Texas corporation in 1994, at the time of the original agreement between USA and the Holks. At that time, USA may have been a Delaware corporation with its headquarters in Arizona, but moved its headquarters to Texas in 1994.

After the fishing trip in May 2002, USA attempted several times to contact Andy Holk to schedule additional fishing trips. Receiving no response, USA sent a demand letter to Andy Holk for $16,505.09, the balance remaining of the $25,000 prepayment. Still receiving no response, USA filed suit against the Holks in Travis County for breach of contract and unjust enrichment. The Holks filed a special appearance, attaching affidavits stating that they are Alabama residents, do not engage in business in Texas, do not actively solicit business in Texas, and do not visit Texas on a regular basis. They further averred that the events giving rise to the claim did not take place in Texas because USA was an Arizona company at the time of the initial contact and the services provided took place in Alabama. The trial court held a hearing on the special appearance, at which Bogle testified and the Holks presented evidence by affidavit. The trial court denied the special appearance, and it is from this denial that the Holks bring this interlocutory appeal.

## ANALYSIS

### Standard of Review

The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the personal jurisdiction of a Texas court. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 793 (Tex. 2002). A defendant challenging the court's assertion of personal jurisdiction must negate all jurisdictional bases alleged in the plaintiff's pleading. *Id.* Whether a court has personal jurisdiction over a defendant is a question of law, which we review *de novo*. *Id.* at 794. However, the trial court frequently must resolve questions of fact before deciding the question of jurisdiction. *Id.* When, as here, the trial court does not issue findings of fact and

3

conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied. *Id.* at 795. When the appellate record includes both the reporter's and clerk's records, however, these implied findings are not conclusive and may be challenged for legal and factual sufficiency. *Id.*

### *Personal Jurisdiction*

The Texas long-arm statute authorizes Texas courts to exercise jurisdiction over a nonresident defendant that does business in Texas. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041-.044 (West 1997), § 17.045 (West Supp. 2004). The broad language of the "doing business" requirement in section 17.042 permits the statute to reach as far as the federal constitutional requirements of due process will allow. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991). Thus, we rely on precedent from the United States Supreme Court and other federal courts, as well as Texas decisions, to determine whether the assertion of personal jurisdiction is consistent with the requirements of due process. *BMC Software*, 83 S.W.3d at 795.

Personal jurisdiction over a nonresident defendant is constitutional when two conditions are met: (1) the defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Id.* (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A nonresident defendant that has "purposefully availed" itself of the privileges and benefits of conducting business in the forum state has sufficient contacts to confer personal jurisdiction. *Id.* (citing *Burger King*

4

*Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985)). A defendant should not be subject to jurisdiction based on random, fortuitous, or attenuated contacts. *Id.* (citing *Burger King*, 471 U.S. at 475).

The minimum contacts analysis has been refined into two types of jurisdiction—specific and general jurisdiction. Because USA does not contend that general jurisdiction exists, we will confine our discussion to specific jurisdiction. Specific jurisdiction exists when the nonresident defendant's activities have been "purposefully directed" to the forum and the litigation results from injuries arising out of or relating to those activities. *Guardian Royal*, 815 S.W.2d at 228. The minimum contacts analysis for specific jurisdiction is somewhat narrow, focusing on the relationship among the defendant, the forum, and the litigation. *Id.*; *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990). "It is the quality and nature of the defendant's contacts, rather than their number, that is important to the minimum-contacts analysis." *American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002) (citing *Guardian Royal*, 815 S.W.2d at 230 n.11).

Texas employs a three-part test to determine whether there is specific jurisdiction:

(1)  The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state;

(2)  The cause of action must arise from, or be connected with, such act or transaction; and

(3)  The assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

*Schlobohm*, 784 S.W.2d at 358 (citing *O'Brien v. Lanpar Co.*, 399 S.W.2d 340, 342 (Tex. 1966)). These requirements ensure that a nonresident will be "haled" into court only as a result of intentional activities, so that it is reasonable for the nonresident defendant to expect the call of a Texas court. *See Guardian Royal*, 815 S.W.2d at 226; *Schlobohm*, 784 S.W.2d at 357-58.

At the outset, we reject USA's argument that the Holks waived any jurisdictional defects by failing to file a motion to quash. As USA properly states, a special appearance is "for the purpose of objecting to the jurisdiction of the court over the person or property of the defendant on the ground that such party or property is not amenable to process issued by the courts of this State." Tex. R. Civ. P. 120a. A motion to quash, on the other hand, is the proper vehicle for objecting to jurisdictional defects. *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex. 1985). Because the Holks objected to personal jurisdiction, not to jurisdictional defects in USA's pleading, they properly filed a special appearance. We now turn to an examination of whether the defendants were subject to the jurisdiction of a Texas court.

***Specific Jurisdiction***

In its petition, USA alleged the following facts to support the trial court's assertion of specific jurisdiction over the Holks: (1) the defendants contracted in Texas to do business with parties in Texas; (2) beginning in 2001, USA prepaid the defendants $25,000 per year at the insistence of Arthur Holk for fifteen days of use of the boat per year;[2] and (3) the defendants breached their agreement in 2002 by failing to provide fishing trips or, in the alternative, were

---

[2] The evidence adduced at the special appearance hearing established that *Andy* Holk, not Arthur Holk, requested payment from USA in telephone calls to Bogle.

6

unjustly enriched. To be subject to the specific jurisdiction of a Texas court, the Holks must have committed purposeful acts in Texas that gave rise to this litigation. *See Schlobohm*, 784 S.W.2d at 358; *Botter v. American Dental Ass'n*, No. 03-03-00314-CV, slip op. at 8, 2003 Tex. App. LEXIS 10565, at \*13 (Austin Dec. 18, 2003, no pet. h.). At oral argument, USA contended that consummating an agreement with a Texas resident was a sufficient purposeful act. We disagree. It has long been established that contracting with a Texas resident alone does not satisfy the minimum contacts requirements. *Burger King*, 471 U.S. at 478; *TeleVentures, Inc. v. International Game Tech*., 12 S.W.3d 900, 909 (Tex. App.—Austin 2000, pet. denied). Instead, courts must apply a "highly realistic" approach that recognizes that a "contract . . . [is] ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Burger King*, 471 U.S. at 479. Prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing, must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum. *Id.* Therefore, without more, merely establishing oral agreements for USA to use the boat was not sufficient to assert personal jurisdiction.

The only evidence USA has provided to suggest that the Holks committed purposeful actions in Texas is Andy Holk's solicitation of USA's business in at least three telephone calls[3] to Bogle, USA's representative, in Austin, and that in those conversations Holk entered into oral agreements for USA to use the boat. We find such evidence to be unpersuasive. The mere fact that

---

[3] According to Bogle's testimony, Andy Holk called him once in 1999, once in 2001, and once in 2002, all to check if USA wanted to use the boat again.

7

Holk called to enter into an agreement with USA, a Texas corporation, does not necessarily bring Holk within the jurisdiction of a Texas court. *Id.* at 478. Bogle testified that Holk visited his office once in Austin but established no connection between the visit and the oral agreements to use the boat. He further testified that Holk offered to pick him up anywhere on the Gulf Coast, including Texas, but that the boat trips originated only from the Louisiana, Alabama, and Florida coasts. USA presented no evidence that its use of the boat occurred at any time in Texas.

USA places great weight on the fact that Andy Holk solicited its business by telephone. However, the relationship between the parties began not with the telephone call in 1999 but instead with an oral agreement made in 1994, in Pensacola, Florida, for USA to use the boat for fishing trips. Bogle testified that the 1994 agreement ended in 1998. The next year, Holk called Bogle to ask if he wanted to use the boat again.

We find this case to be similar to *3-D Electric Co. v. Barnett Construction Co.*, in which a Texas company sued a nonresident contractor for breach of an oral contract on work performed out of state. 706 S.W.2d 135 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). Unlike in this case, the nonresident defendant did not contest doing business in Texas. *Id.* at 140. The question then was whether the degree to which he had done business in Texas was sufficient to satisfy minimum contacts. *Id.* at 141. The defendant's contacts with Texas were telephone calls—including discussions about the terms of the contract—correspondence, and payments to the Texas company. *Id.* at 142. The court held that this was insufficient to constitute purposeful availment of conducting activities within the forum state.

8

We are also informed by this Court's analysis in *Beechem v. Pippin*, 686 S.W.2d 356 (Tex. App.—Austin 1985, no writ). There, a Georgia resident entered into a written contract to lease equipment from a Texas company. We examined "(1) the degree to which [the nonresidents] have availed themselves of the privileges, benefits and protections of this State, (2) the foreseeability of intrastate effects traceable to [the nonresidents'] activities, and (3) the degree to which the citizens of this State were put at risk by [the nonresidents'] conduct." *Id.* at 361. Because the contract was solicited, negotiated, and partially performed in Texas, we found that it was "substantially just" to assert personal jurisdiction. *Id.* at 363. Here, unlike in *3-D Electric* or *Beechem*, the defendants have fewer contacts with Texas.

On the other hand, we find the cases on which USA relies to be distinguishable from the facts of the instant case. In *Rynone Manufacturing Corp. v. Republic Industries, Inc.*, as in this case, the nonresident defendant initiated contact with a Texas company. 96 S.W.3d 636 (Tex. App.—Texarkana 2002, no pet.). The defendant also advertised nationally, which the supreme court has found to be a sufficiently purposeful act directed at Texas. *See Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 436 (Tex. 1982). The court in *Rynone* found personal jurisdiction on the ground that telephone solicitation was "an even more purposeful act than advertising in a Texas telephone directory." *Rynone Mfg.*, 96 S.W.3d at 640. Here, USA presented no evidence that the Holks advertised in Texas. The only affirmative acts directed toward Texas were Andy Holk's calls to USA in Austin.

USA also relies on *Charles R. Weber Co. v. Back-Haul Bulk Carriers, Inc.*, in which the plaintiff brought allegations of deceptive trade practices, fraud, and negligent misrepresentation.

9

No. 14-02-00240-CV, 2002 Tex. App. LEXIS 8779 (Houston [14th Dist.] Dec. 12, 2002, no pet.) (not designated for publication). Comporting with a well-settled rule, the court held that a single telephone call initiated by a nonresident company is sufficient to assert specific jurisdiction if a misrepresentation directed to Texas occurred in the call. *Id.* at *7-8 (involved petition alleging fraud or misrepresentation and held that directing a misrepresentation at Texas constitutes a tort committed in part in Texas, therefore satisfying the Texas long-arm statute); *see Siskind*, 642 S.W.2d at 437 (same); *Ring Power Sys. v. International de Comercio y Consultoria, S.A.*, 39 S.W.3d 350, 353-54 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (same); *Augustino v. Handling Trailer Sales*, No. 03-00-00675-CV, 2001 Tex. App. LEXIS 4971, at *14-15 (Austin Jul. 26, 2001, no pet.) (not designated for publication) (same); *Memorial Hosp. Sys. v. Fisher Ins. Agency, Inc.*, 835 S.W.2d 645, 648 (Tex. App.—Houston [14th Dist.] 1992, no writ) (op. on reh'g) (same). We do not find these cases to be analogous to the instant case because USA makes no allegation of a misrepresentation, only breach of contract.

In the absence of allegations of fraud or misrepresentation, courts have repeatedly recognized that personal jurisdiction is not justified by the single fact that a nonresident contracts with a Texas resident. *See, e.g.*, *Electrosource, Inc. v. Horizon Battery Techs.*, 176 F.3d 867, 872 (5th Cir. 1999) (applying Texas law); *Blair Communications, Inc. v. SES Survey Equip. Servs., Inc.*, 80 S.W.3d 723, 730 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *J.D. Fields & Co. v. W.H. Streit, Inc.*, 21 S.W.3d 599, 604 (Tex. App.—Houston [1st Dist.] 2000, no pet.); *TeleVentures*, 12 S.W.3d at 908-09. "While purposeful contact with the forum state is an important component of the minimum contacts analysis, equally important is the requirement that there be a substantial

10

connection between the nonresident defendant and the forum state arising from such contact." *Ring Power Sys.*, 39 S.W.3d at 354. Here, the only connections between the Holks and Texas were Andy Holk's telephone calls to arrange for USA's use of the boat. Otherwise, the evidence shows that USA never used the boat on the Texas coast and that the Holks are residents of Alabama who maintain their business in Alabama. Furthermore, USA makes no allegation of fraud or misrepresentation. Viewing the relationship among the defendants, the forum, and the litigation, we do not find that the Holks established the minimum contacts necessary to purposefully avail themselves of the protections of Texas laws. *See Burger King*, 471 U.S. at 474-75, 478. We therefore hold that the Holks presented sufficient evidence to negate USA's allegation supporting specific jurisdiction.

Because the Holks' contacts with Texas were insufficient to avail themselves of the privileges, benefits, and protections of this state, *see Beechem*, 686 S.W.2d at 361, haling them into a Texas court would "offend traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316; *Schlobohm*, 784 S.W.2d at 358. We sustain the Holks' issue, reverse the trial court's denial of their special appearance, render judgment granting their special appearance, and order dismissal of USA's suit for lack of personal jurisdiction.

## CONCLUSION

Merely contracting with a Texas resident does not satisfy the minimum contacts requirements necessary to assert personal jurisdiction over a nonresident defendant. *Burger King*, 471 U.S. at 478; *TeleVentures*, 12 S.W.3d at 909. The Holks' only affirmative acts directed toward Texas were calls to USA in Austin to arrange for use of the boat out of state. The calls to arrange

11

oral agreements, without more, are not sufficient to demonstrate that the Holks availed themselves of the protections of Texas laws. *See Burger King*, 471 U.S. at 478; *Blair Communications*, 80 S.W.3d at 730. Accordingly, we reverse the trial court's denial of the Holks' special appearance, render judgment granting their special appearance, and order dismissal of USA's suit for lack of personal jurisdiction.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Reversed and Rendered

Filed: February 12, 2004

12