TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-03-00477-CV







ON MOTION FOR REHEARING





Arthur Holk and Andy Holk d/b/a Pleasure Motion, Appellants


v.


USA Managed Care Organization, Inc., Appellee






FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY

NO. 266,462, HONORABLE ORLINDA L. NARANJO, JUDGE PRESIDING






D I S S E N T I N G O P I N I O N


 Because I adhere to the original, unanimous opinion and judgment issued on February
12, 2004, I respectfully dissent.

 Ignoring the nature of the prior relationship between the parties, the majority
concludes that it is irrelevant: "The prior arrangement between the parties, ending in 1998, bears
little, if any, significance to the determination of whether soliciting USA's renewal business over
the telephone was purposefully directed at Texas." In a contract suit based on an oral agreement, as
this is, there is no authority for ignoring the arrangement between the parties, particularly where, as
here, the petition alleges that "the agreement" was renewed each year. Further, in determining that
one contract ended and another began, the majority improperly addresses the merits of this dispute.

 The sole basis of USA's argument that the court has jurisdiction is that "Defendants
have contracted in the state to do business with parties located within this state." Although the
majority suggests that the initiation of the parties' relationship is "unclear," the only evidence in the
record was provided by USA. USA's president, George Bogle, testified that he entered into a "deal"
in 1994 with the Holks to finance building of the boat and "put [Andy] in business," and that the
"original arrangement was probably made in Pensacola." USA does not dispute that the relationship
began with an oral agreement made in 1994 in Florida; the sole jurisdictional allegation is that the
Holks contracted "in this state with parties located within this state."

 Nor does USA allege that the "arrangement" ended as the majority recites. That the
prior arrangement is relevant is clear from the original petition which describes the nature of the
"Agreement": the parties "renewed the Agreement each year since 1997 except for 2000 in which
year Defendants' services were not used." (Emphasis added.) Bogle testified that in 2002, the year
in which the alleged breach occurred, "Andy called and said he wanted to know if we wanted to use
the boat." There is no allegation that Holk either made a misrepresentation or engaged in fraud. 
Rather, the sole allegation is that the Holks did not perform under the agreement to provide fishing
trips and use of the boat.

 The majority recites that Andy Holk called USA on the telephone "three times over
four years to solicit its rental of the boat and offered to pick USA up in the boat anywhere along the
Gulf Coast." The record shows the following: Andy Holk called USA once in 1999, once in 2001,
and once in 2002 offering use of the boat, and USA agreed to its use; USA did not use the boat in
2000. The arrangements seemed to vary. In 2001, USA paid Holk periodically as it used the boat 
because "two years ago he had not shown up." Bogle testified that "[t]hey offered to pick you up
anywhere on the gulf coast"; (1) the actual boat trips originated one time in Louisiana and "a couple
or three times in Florida." (2) In 2002, USA prepaid the entire amount of $25,000, but used the boat
only once for three days, then sued to recover the balance of the money paid for which it did not
receive services.

 If the original agreement is irrelevant, as asserted by the majority, then the question
we are called to answer is whether the single call in 2002--or three calls over the four-year period
if the entire arrangement is considered--constitutes the "purposeful availment" by a nonresident of
the privilege of conducting activities within the forum state required to invoke the benefits and
protections of the state's laws. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75 (1985) (citing
Hanson v. Denckla, 357 U.S. 235, 253 (1958)). This is to avoid jurisdiction based solely on
"random," "fortuitous," or "attenuated" contacts that would not satisfy the due process requirements
of "doing business" in Texas. See Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041-.044 (West 1997),
§ 17.045 (West Supp. 2004); Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,
815 S.W.2d 223, 226 (Tex. 1991) (citing Burger King, 471 U.S. at 475). The exercise of personal
jurisdiction is proper when the contacts "proximately result from actions" of the nonresident
defendant, which create a "substantial connection" with the forum state. Burger King, 471 U.S. at
475. And the "substantial connection" between the nonresident defendant and the forum state
necessary for a finding of minimum contacts must come about by action or conduct of the
nonresident defendant "purposefully directed toward the forum state." Id.

 Due process requires that a defendant not be haled into a Texas court unless his
activities should have led him to reasonably anticipate being answerable here. See Schlobohm v.
Schapiro, 784 S.W.2d 355, 359 (Tex. 1990) (noting that "the quality, nature, and extent of [the
nonresident's] activity in Texas justifies a conclusion that he should expect to be called to our
courts"). Here, the single call from Alabama in 2002, or the three calls if we consider the whole
arrangement, all of which led to use of the boat outside of Texas, cannot without more convert to the
expectation of being haled into a Texas court.

 These facts are distinguishable from those in Rynone Manufacturing Corp. v.
Republic Industries, Inc., 96 S.W.3d 636 (Tex. App.--Texarkana 2002, no pet.). But even in
Rynone, the court considered the course of business between the parties, finding that "[t]he only
evidence in the record about the origin of the parties' relationship" was a telephone solicitation on
behalf of the nonresident Rynone directed toward the plaintiff Republic in the forum state. Id. at
639. In addition, Republic was aware of Rynone through advertisements placed in national trade
publications, and the parties negotiated with each other by "several" telephone and facsimile
communications. Id. Republic also produced drawings in the forum state that were forwarded to
Rynone, where they became a part of the written contract. Id. The court thus considered prior
negotiations and contemplated future consequences, along with the terms of the contract and the
parties' actual course of dealing, to evaluate whether Rynone purposefully established minimum
contacts within the forum. Id.

 Unlike this case, the very origin of the parties' relationship in Rynone was initiated
by a telephone solicitation of business. Thus, the court found that the lawsuit "traces back" to this
originating telephone call in which Rynone sought to do business with Republic. Id. at 640. Rynone
initiated the business relationship between the parties through advertising and the telephone call. 
But jurisdiction did not rest on the telephone call alone. Id. And, although the majority
acknowledges that Rynone is distinguishable because the parties' relationship "began via a telephone
solicitation," they find it insignificant because they determine that the agreement here ended and
started anew with a telephone call.

 But it is significant that the relationship here originated outside of Texas, at a time
when USA may have been located in Arizona, and was not prompted by any purposeful solicitation
of business in Texas. It is because of this relationship that the entire arrangement of the parties must
be considered here. The majority's conclusion that the parties' prior arrangement ceased in 1998 
and was later renewed by a telephone solicitation from the Holks is at odds with USA's allegation
in its petition that the parties "have renewed the Agreement each year since 1997 except for 2000
in which year Defendants' services were not used" and that "Plaintiff has used the Boat each year
for parties and outings."

 As in Rynone, and unlike here, the relationship between the parties in Beechem v.
Pippin, 686 S.W.2d 356 (Tex. App.--Austin 1985, no writ), originated with a telephone solicitation. 
But this Court did not find the origination call alone sufficient to confer jurisdiction. Rather, it was
because the written contract was solicited, negotiated, and partially performed in Texas that the
Court found that the out-of-state party had purposefully availed itself of the privilege of conducting
activities within the forum state. "Pippin solicited the contract by a telephone call to Beechem in
Texas, Beechem signed the contract here, and payments were made by mail to Beechem's business
address in Texas." Id. at 361. Distinguishing other cases, this Court found that the nonresident had
other contacts with Texas, including correspondence, payment for the moving of a sludge applicator
in Texas, and causing its insurance agent to contact the Texas company to arrange coverage for the
machine. Id. at 362. In Beechem, we concluded: "We do not imply by this opinion that merely
contracting with a resident of this State will alone support jurisdiction in Texas courts to determine
whether a breach has occurred." Id. at 363. We went on to hold that the contacts of the
nonresident--"those that were related to the cause as well as those that were unrelated--were
quantitatively and qualitatively sufficient to make [the nonresident] answerable in the courts of
Texas on the alleged breach of contract." Id.

 And that is the question here: whether the contacts of the nonresident were
quantitatively and qualitatively sufficient and purposefully directed to this forum. I would hold that
the single call was insufficient: it did not form the basis for the relationship and there is no
allegation that it was fraudulent or contained misrepresentations. Even the three telephone calls over
a four-year period do not rise to the level of purposeful acts directed at the forum state sufficient to
invoke the protections and benefits of Texas courts. But even if the single call in 2002 "renewed"
a contractual relationship between the parties, there is no authority for resting jurisdiction in a
contract case on a single call. The issue remains the same: to establish the minimum contacts with
the forum state required to confer jurisdiction, only a nonresident that has purposefully availed itself
of the privileges and benefits of conducting business in the forum state has sufficient contacts to
confer personal jurisdiction.

 Courts have specifically rejected jurisdiction based on a single telephone call to
initiate a contract. In Blair Communications, Inc. v. SES Survey Equipment Services, Inc., our sister
court in Houston concluded: "We do not believe that initiating contract discussions with a Texas
resident, and subsequently entering into a contract, in addition to making payment in Texas, are
sufficient contacts with Texas when the entire substance of the contract is performed outside the
state." 80 S.W.3d 723, 730 (Tex. App.--Houston [1st Dist.] 2002, no pet.). See also Electrosource,
Inc. v. Horizon Battery Techs., 176 F.3d 867, 872 (5th Cir. 1999) (applying Texas law) (contract
with an out-of-state party alone does not automatically establish sufficient minimum contacts; other
factors must be considered); J.D. Fields & Co. v. W.H. Streit, Inc., 21 S.W.3d 599, 604 (Tex.
App.--Houston [1st Dist.] 2000, no pet.) (same); TeleVentures, Inc. v. International Game Tech.,
12 S.W.3d 900, 909 (Tex. App.--Austin 2000, pet. denied) (same). The court in Blair
Communications further rejected a bright-line test that focuses solely on the initiation of contact
between the parties: "While purposeful contact with the forum state is an important component of
the minimum contacts analysis, equally important is the requirement that there be a substantial
connection between the nonresident defendant and the forum state arising from such contact." Id.
(quoting Ring Power Sys. v. International De Comercio y Consultoria, S.A., 39 S.W.3d 350, 354
(Tex. App.--Houston [14th Dist.] 2001, no pet.)).

 There is no showing that the Holks engaged in purposeful activities within the forum
state or had the necessary minimum contacts to subject them to personal jurisdiction in Texas. The
Holks' only affirmative acts directed toward Texas were three calls to USA in Austin over four years
to arrange for use of the boat. Otherwise, the evidence shows that the relationship originated outside
of Texas, USA never used the boat on the Texas coast, and the Holks are residents of Alabama who
maintain their business in Alabama. The Holks' activities do not justify an expectation of being
haled into a Texas court.

 Because the Holks' contacts with Texas were insufficient to avail themselves of the
privileges, benefits, and protections of this state, see Beechem, 686 S.W.2d at 361, haling them into
a Texas court would "offend traditional notions of fair play and substantial justice." International
Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Schlobohm, 784 S.W.2d at 358. Accordingly,
I would reverse the judgment of the trial court, render judgment granting the Holks' special
appearance, and order dismissal of USA's suit for lack of personal jurisdiction.



 

 Jan P. Patterson, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Filed: July 15, 2004

1. The majority goes so far as to interpret the oral contract between the parties as allowing
USA to "demand performance in Texas." This does not appear in the record. Bogle testified both
that "[t]hey offered to pick you up anywhere on the gulf coast" and "they offered to pick me up
anywhere on the Texas coast at any time," but that the Holks never did so. That the contract could
have been performed in Texas is not determinative; specific jurisdiction turns on actual contacts and
conduct directed to the forum state. Further, because the record does not demonstrate when the
Holks made the "offer," we do not have sufficient facts to infer that this offer pertained to the
arrangement to use the boat in 2002, the original agreement, or whether it was a term at any time.
2. There are no jurisdictional facts alleged in the petition or contained in testimony regarding
Arthur Holk. In addition, Bogle's testimony that "I think they have picked people up . . . at places
along the Texas coast" might be relevant to an assessment of general jurisdiction, but is not relevant
to USA's assertion of specific jurisdiction. See BMC Software Belg., N.V. v. Marchand, 83 S.W.3d
789, 797 (Tex. 2002) (assertion of general jurisdiction requires proof of "substantial activities"
within the forum). USA does not contend that general jurisdiction exists.