TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-03-00477-CV






Arthur Holk and Andy Holk d/b/a Pleasure Motion, Appellants


v.


USA Managed Care Organization, Inc., Appellee







FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY

NO. 266462, HONORABLE ORLINDA L. NARANJO, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N




 USA Managed Care Organization, Inc. ("USA") filed suit in Texas against Alabama
residents Arthur Holk and Andy Holk, individuals doing business as the boat "Pleasure Motion," for
failing to fulfill their agreement to provide the use of the boat to USA for fishing trips. The Holks
filed a special appearance claiming that because they are not residents of Texas, do not engage in
business in Texas, and the activities made the basis of USA's claims did not take place in Texas,
they are not subject to the jurisdiction of Texas courts. Tex. R. Civ. P. 120a. After a hearing, the
trial court denied their special appearance. It is from this denial that the Holks bring this
interlocutory appeal. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (West Supp. 2004). For the
reasons set forth below, we reverse the trial court's denial of the Holks' special appearance, render
judgment granting their special appearance, and order dismissal of USA's suit for lack of personal
jurisdiction.


FACTUAL AND PROCEDURAL BACKGROUND


 In 1994, USA, a Texas corporation with its principal place of business in Austin, (1)
entered into an oral agreement with the Holks, residents of Alabama who own a boat, the "Pleasure
Motion," to use the boat occasionally for fishing trips. Andy Holk operated the boat, and his father,
Arthur Holk, backed his son's operation. It is unclear from the record who initiated the contact, but,
according to the testimony of USA's chief executive officer, George Bogle, this agreement probably
took place in Pensacola, Florida, and continued until 1998. In 1999, Andy Holk called Bogle in
Austin to ask if USA wanted to use the boat again. USA did so in 1999 but not in 2000. In 2001,
Andy Holk called Bogle again in Austin to make arrangements for USA to use the boat. USA did
so three or four times in 2001, paying a total of $25,000. Again in 2002, Andy Holk called Bogle
in Austin to talk about arranging fishing trips. Holk asked for a $25,000 payment in advance, which
USA sent. USA used the boat for a fishing trip one time for three days in May 2002, incurring
charges of $8,494.91. All of USA's payments for the use of the boat were from its bank account in
Texas. Andy Holk offered to pick up Bogle and his guests anywhere on the Gulf Coast, picking
them up once in Louisiana and a few times in Florida.

 After the fishing trip in May 2002, USA attempted several times to contact Andy
Holk to schedule additional fishing trips. Receiving no response, USA sent a demand letter to Andy
Holk for $16,505.09, the balance remaining of the $25,000 prepayment. Still receiving no response,
USA filed suit against the Holks in Travis County for breach of contract and unjust enrichment. The
Holks filed a special appearance, attaching affidavits stating that they are Alabama residents, do not
engage in business in Texas, do not actively solicit business in Texas, and do not visit Texas on a
regular basis. They further averred that the events giving rise to the claim did not take place in Texas
because USA was an Arizona company at the time of the initial contact and the services provided
took place in Alabama. The trial court held a hearing on the special appearance, at which Bogle
testified and the Holks presented evidence by affidavit. The trial court denied the special
appearance, and it is from this denial that the Holks bring this interlocutory appeal.


ANALYSIS

Standard of Review

 The plaintiff bears the initial burden of pleading sufficient allegations to bring a
nonresident defendant within the personal jurisdiction of a Texas court. BMC Software Belgium,
N.V. v. Marchand, 83 S.W.3d 789, 793 (Tex. 2002). A defendant challenging the court's assertion
of personal jurisdiction must negate all jurisdictional bases alleged in the plaintiff's pleading. Id. 
Whether a court has personal jurisdiction over a defendant is a question of law, which we review de
novo. Id. at 794. However, the trial court frequently must resolve questions of fact before deciding
the question of jurisdiction. Id. When, as here, the trial court does not issue findings of fact and
conclusions of law with its special appearance ruling, all facts necessary to support the judgment and
supported by the evidence are implied. Id. at 795. When the appellate record includes both the
reporter's and clerk's records, however, these implied findings are not conclusive and may be
challenged for legal and factual sufficiency. Id.


Personal Jurisdiction

 The Texas long-arm statute authorizes Texas courts to exercise jurisdiction over a
nonresident defendant that does business in Texas. See Tex. Civ. Prac. & Rem. Code Ann.
§§ 17.041-.044 (West 1997), § 17.045 (West Supp. 2004). The broad language of the "doing
business" requirement in section 17.042 permits the statute to reach as far as the federal
constitutional requirements of due process will allow. Guardian Royal Exch. Assurance, Ltd. v.
English China Clays, P.L.C., 815 S.W.2d 223, 226 (Tex. 1991). Thus, we rely on precedent from
the United States Supreme Court and other federal courts, as well as Texas decisions, to determine
whether the assertion of personal jurisdiction is consistent with the requirements of due process. 
BMC Software, 83 S.W.3d at 795.

 Personal jurisdiction over a nonresident defendant is constitutional when two
conditions are met: (1) the defendant has established minimum contacts with the forum state, and
(2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. 
Id. (citing International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). A nonresident
defendant that has "purposefully availed" itself of the privileges and benefits of conducting business
in the forum state has sufficient contacts to confer personal jurisdiction. Id. (citing Burger King
Corp. v. Rudzewicz, 471 U.S. 462, 474-76 (1985)). A defendant should not be subject to jurisdiction
based on random, fortuitous, or attenuated contacts. Id. (citing Burger King, 471 U.S. at 475).

 The minimum contacts analysis has been refined into two types of
jurisdiction--specific and general jurisdiction. Because USA does not contend that general
jurisdiction exists, we will confine our discussion to specific jurisdiction. Specific jurisdiction exists
when the nonresident defendant's activities have been "purposefully directed" to the forum and the
litigation results from injuries arising out of or relating to those activities. Guardian Royal, 815
S.W.2d at 228. The minimum contacts analysis for specific jurisdiction is somewhat narrow,
focusing on the relationship among the defendant, the forum, and the litigation. Id.; Schlobohm v.
Schapiro, 784 S.W.2d 355, 357 (Tex. 1990). "It is the quality and nature of the defendant's contacts,
rather than their number, that is important to the minimum-contacts analysis." American Type
Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 806 (Tex. 2002) (citing Guardian Royal, 815
S.W.2d at 230 n.11).

 Texas employs a three-part test to determine whether there is specific jurisdiction:


(1) The nonresident defendant or foreign corporation must purposefully do some act
or consummate some transaction in the forum state;


(2) The cause of action must arise from, or be connected with, such act or
transaction; and


(3) The assumption of jurisdiction by the forum state must not offend traditional
notions of fair play and substantial justice, consideration being given to the
quality, nature, and extent of the activity in the forum state, the relative
convenience of the parties, the benefits and protection of the laws of the forum
state afforded the respective parties, and the basic equities of the situation.



Schlobohm, 784 S.W.2d at 358 (citing O'Brien v. Lanpar Co., 399 S.W.2d 340, 342 (Tex. 1966)). 
These requirements ensure that a nonresident will be "haled" into court only as a result of intentional
activities, so that it is reasonable for the nonresident defendant to expect the call of a Texas court. 
See Guardian Royal, 815 S.W.2d at 226; Schlobohm, 784 S.W.2d at 357-58.

 At the outset, we reject USA's argument that the Holks waived any jurisdictional
defects by failing to file a motion to quash. As USA properly states, a special appearance is "for the
purpose of objecting to the jurisdiction of the court over the person or property of the defendant on
the ground that such party or property is not amenable to process issued by the courts of this State." 
Tex. R. Civ. P. 120a. A motion to quash, on the other hand, is the proper vehicle for objecting to
jurisdictional defects. Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 203 (Tex. 1985). 
Because the Holks objected to personal jurisdiction, not to jurisdictional defects in USA's pleading,
they properly filed a special appearance. We now turn to an examination of whether the defendants
were subject to the jurisdiction of a Texas court.


Specific Jurisdiction

 In its petition, USA alleged the following facts to support the trial court's assertion
of specific jurisdiction over the Holks: (1) the defendants contracted in Texas to do business with
parties in Texas; (2) beginning in 2001, USA prepaid the defendants $25,000 per year at the
insistence of Arthur Holk for fifteen days of use of the boat per year; (2) and (3) the defendants
breached their agreement in 2002 by failing to provide fishing trips or, in the alternative, were
unjustly enriched. To be subject to the specific jurisdiction of a Texas court, the Holks must have
committed purposeful acts in Texas that gave rise to this litigation. See Schlobohm, 784 S.W.2d at
358; Botter v. American Dental Ass'n, No. 03-03-00314-CV, slip op. at 8, 2003 Tex. App. LEXIS
10565, at *13 (Austin Dec. 18, 2003, no pet. h.). At oral argument, USA contended that
consummating an agreement with a Texas resident was a sufficient purposeful act. We disagree. 
It has long been established that contracting with a Texas resident alone does not satisfy the
minimum contacts requirements. Burger King, 471 U.S. at 478; TeleVentures, Inc. v. International
Game Tech., 12 S.W.3d 900, 909 (Tex. App.--Austin 2000, pet. denied). Instead, courts must apply
a "highly realistic" approach that recognizes that a "contract . . . [is] ordinarily but an intermediate
step serving to tie up prior business negotiations with future consequences which themselves are the
real object of the business transaction." Burger King, 471 U.S. at 479. Prior negotiations and
contemplated future consequences, along with the terms of the contract and the parties' actual course
of dealing, must be evaluated in determining whether the defendant purposefully established
minimum contacts within the forum. Id. Therefore, without more, merely establishing oral
agreements for USA to use the boat was not sufficient to assert personal jurisdiction.

 The only evidence USA has provided to suggest that the Holks committed purposeful
actions in Texas is Andy Holk's solicitation of USA's business in at least three telephone calls (3) to
Bogle, USA's representative, in Austin, and that in those conversations Holk entered into oral
agreements for USA to use the boat. We find such evidence to be unpersuasive. The mere fact that
Holk called to enter into an agreement with USA, a Texas corporation, does not necessarily bring
Holk within the jurisdiction of a Texas court. Id. at 478. Bogle testified that Holk visited his office
once in Austin but established no connection between the visit and the oral agreements to use the
boat. He further testified that Holk offered to pick him up anywhere on the Gulf Coast, including
Texas, but that the boat trips originated only from the Louisiana, Alabama, and Florida coasts. USA
presented no evidence that its use of the boat occurred at any time in Texas.

 USA places great weight on the fact that Andy Holk solicited its business by
telephone. However, the relationship between the parties began not with the telephone call in 1999
but instead with an oral agreement made in 1994, in Pensacola, Florida, for USA to use the boat for
fishing trips. Bogle testified that the 1994 agreement ended in 1998. The next year, Holk called
Bogle to ask if he wanted to use the boat again.

 We find this case to be similar to 3-D Electric Co. v. Barnett Construction Co., in
which a Texas company sued a nonresident contractor for breach of an oral contract on work
performed out of state. 706 S.W.2d 135 (Tex. App.--Dallas 1986, writ ref'd n.r.e.). Unlike in this
case, the nonresident defendant did not contest doing business in Texas. Id. at 140. The question
then was whether the degree to which he had done business in Texas was sufficient to satisfy
minimum contacts. Id. at 141. The defendant's contacts with Texas were telephone calls--including
discussions about the terms of the contract--correspondence, and payments to the Texas company. 
Id. at 142. The court held that this was insufficient to constitute purposeful availment of conducting
activities within the forum state.

 We are also informed by this Court's analysis in Beechem v. Pippin, 686 S.W.2d 356
(Tex. App.--Austin 1985, no writ). There, a Georgia resident entered into a written contract to lease
equipment from a Texas company. We examined "(1) the degree to which [the nonresidents] have
availed themselves of the privileges, benefits and protections of this State, (2) the foreseeability of
intrastate effects traceable to [the nonresidents'] activities, and (3) the degree to which the citizens
of this State were put at risk by [the nonresidents'] conduct." Id. at 361. Because the contract was
solicited, negotiated, and partially performed in Texas, we found that it was "substantially just" to
assert personal jurisdiction. Id. at 363. Here, unlike in 3-D Electric or Beechem, the defendants have
fewer contacts with Texas.

 On the other hand, we find the cases on which USA relies to be distinguishable from
the facts of the instant case. In Rynone Manufacturing Corp. v. Republic Industries, Inc., as in this
case, the nonresident defendant initiated contact with a Texas company. 96 S.W.3d 636 (Tex.
App.--Texarkana 2002, no pet.). The defendant also advertised nationally, which the supreme court
has found to be a sufficiently purposeful act directed at Texas. See Siskind v. Villa Found. for Educ.,
Inc., 642 S.W.2d 434, 436 (Tex. 1982). The court in Rynone found personal jurisdiction on the
ground that telephone solicitation was "an even more purposeful act than advertising in a Texas
telephone directory." Rynone Mfg., 96 S.W.3d at 640. Here, USA presented no evidence that the
Holks advertised in Texas. The only affirmative acts directed toward Texas were Andy Holk's calls
to USA in Austin.

 USA also relies on Charles R. Weber Co. v. Back-Haul Bulk Carriers, Inc., in which
the plaintiff brought allegations of deceptive trade practices, fraud, and negligent misrepresentation. 
No. 14-02-00240-CV, 2002 Tex. App. LEXIS 8779 (Houston [14th Dist.] Dec. 12, 2002, no pet.)
(not designated for publication). Comporting with a well-settled rule, the court held that a single
telephone call initiated by a nonresident company is sufficient to assert specific jurisdiction if a
misrepresentation directed to Texas occurred in the call. Id. at *7-8 (involved petition alleging fraud
or misrepresentation and held that directing a misrepresentation at Texas constitutes a tort committed
in part in Texas, therefore satisfying the Texas long-arm statute); see Siskind, 642 S.W.2d at 437
(same); Ring Power Sys. v. International de Comercio y Consultoria, S.A., 39 S.W.3d 350, 353-54
(Tex. App.--Houston [14th Dist.] 2001, no pet.) (same); Augustino v. Handling Trailer Sales, No.
03-00-00675-CV, 2001 Tex. App. LEXIS 4971, at *14-15 (Austin Jul. 26, 2001, no pet.) (not
designated for publication) (same); Memorial Hosp. Sys. v. Fisher Ins. Agency, Inc., 835 S.W.2d
645, 648 (Tex. App.--Houston [14th Dist.] 1992, no writ) (op. on reh'g) (same). We do not find
these cases to be analogous to the instant case because USA makes no allegation of a
misrepresentation, only breach of contract.

 In the absence of allegations of fraud or misrepresentation, courts have repeatedly
recognized that personal jurisdiction is not justified by the single fact that a nonresident contracts
with a Texas resident. See, e.g., Electrosource, Inc. v. Horizon Battery Techs., 176 F.3d 867, 872
(5th Cir. 1999) (applying Texas law); Blair Communications, Inc. v. SES Survey Equip. Servs., Inc.,
80 S.W.3d 723, 730 (Tex. App.--Houston [1st Dist.] 2002, no pet.); J.D. Fields & Co. v. W.H.
Streit, Inc., 21 S.W.3d 599, 604 (Tex. App.--Houston [1st Dist.] 2000, no pet.); TeleVentures, 12
S.W.3d at 908-09. "While purposeful contact with the forum state is an important component of the
minimum contacts analysis, equally important is the requirement that there be a substantial
connection between the nonresident defendant and the forum state arising from such contact." Ring
Power Sys., 39 S.W.3d at 354. Here, the only connections between the Holks and Texas were Andy
Holk's telephone calls to arrange for USA's use of the boat. Otherwise, the evidence shows that
USA never used the boat on the Texas coast and that the Holks are residents of Alabama who
maintain their business in Alabama. Furthermore, USA makes no allegation of fraud or
misrepresentation. Viewing the relationship among the defendants, the forum, and the litigation, we
do not find that the Holks established the minimum contacts necessary to purposefully avail
themselves of the protections of Texas laws. See Burger King, 471 U.S. at 474-75, 478. We
therefore hold that the Holks presented sufficient evidence to negate USA's allegation supporting
specific jurisdiction.

 Because the Holks' contacts with Texas were insufficient to avail themselves of the
privileges, benefits, and protections of this state, see Beechem, 686 S.W.2d at 361, haling them into
a Texas court would "offend traditional notions of fair play and substantial justice." International
Shoe, 326 U.S. at 316; Schlobohm, 784 S.W.2d at 358. We sustain the Holks' issue, reverse the trial
court's denial of their special appearance, render judgment granting their special appearance, and
order dismissal of USA's suit for lack of personal jurisdiction.


CONCLUSION


 Merely contracting with a Texas resident does not satisfy the minimum contacts
requirements necessary to assert personal jurisdiction over a nonresident defendant. Burger King,
471 U.S. at 478; TeleVentures, 12 S.W.3d at 909. The Holks' only affirmative acts directed toward
Texas were calls to USA in Austin to arrange for use of the boat out of state. The calls to arrange
oral agreements, without more, are not sufficient to demonstrate that the Holks availed themselves
of the protections of Texas laws. See Burger King, 471 U.S. at 478; Blair Communications, 80
S.W.3d at 730. Accordingly, we reverse the trial court's denial of the Holks' special appearance,
render judgment granting their special appearance, and order dismissal of USA's suit for lack of
personal jurisdiction.



 

 Jan P. Patterson, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Reversed and Rendered

Filed: February 12, 2004

1. It is unclear from the record whether USA was a Texas corporation in 1994, at the time of
the original agreement between USA and the Holks. At that time, USA may have been a Delaware
corporation with its headquarters in Arizona, but moved its headquarters to Texas in 1994.
2. The evidence adduced at the special appearance hearing established that Andy Holk, not
Arthur Holk, requested payment from USA in telephone calls to Bogle.
3. According to Bogle's testimony, Andy Holk called him once in 1999, once in 2001, and
once in 2002, all to check if USA wanted to use the boat again.